CUDAHY, Circuit Judge.
 

 This case requires us to decide whether obligations owed by retail merchants in Illinois pursuant to the Illinois Use Tax Act (the “Use Tax Act”), Ill.Rev.Stat. ch. 120, §§ 439.1
 
 et seq.,
 
 are dischargeable in bankruptcy. The .appellants in these consolidated cases are debtors whose obligations under the Illinois Retailers’ Occupation Tax Act (the “Occupation Tax Act”), Ill.Rev. Stat. ch. 120, §§ 440
 
 et seq.,
 
 have been discharged in bankruptcy, presumably pursuant to 11 U.S.C. § 507(a)(6)(A), and they argue that their obligations under the Use Tax Act should be similarly discharged. The bankruptcy judges who considered each case concluded that the obligation under the Use Tax Act was instead an exception to discharge under 11 U.S.C. § 523(a)(1)(A). We affirm.
 

 I
 

 These consolidated cases have been submitted on stipulated facts. John Arthur Rosenow, appellant in Case No. 82-2419, was engaged in the tavern business in Sheffield, Illinois, from 1976 to September 1978. He was subject to the requirements of both the Use Tax Act and the Occupation Tax Act. On February 4, 1982, Mr. Rosenow filed a Chapter 7 Petition in the United States Bankruptcy Court for the Central District of Illinois.
 

 Robert M. Hull, appellant in Case No. 82-2531, was engaged in the retail sale of sporting goods and musical instruments in Bloomington, Illinois and in Downs, Illinois. Like Mr. Rosenow, he was subject to the requirements of both the Use Tax Act and the Occupation Tax Act. Mr. Hull filed a Chapter 7 Petition in the United States Bankruptcy Court for the Central District of Illinois on January 26, 1982.
 

 After filing their respective petitions, each debtor filed a complaint asking the court to determine that his unpaid tax debts to the State of Illinois were discharged, presumably pursuant to 11 U.S.C. § 507(a)(6)(A) or (E), because the taxes were due and owing more than three years before the filing of the petition. Both bankruptcy judges found that the taxes were not dischargeable, since they were exceptions to discharge under 11 U.S.C. § 523(a)(1)(A). In the
 
 Rosenow
 
 case, the court awarded judgment against the debtor in the amount of $2,272.81, representing the unpaid taxes and interest; the award of taxes and interest in the
 
 Hull
 
 case was $3,458.26. The debtors have appealed these judgments to us. Since neither the amounts of unpaid taxes nor the fact that the monies were actually collected was challenged before the Bankruptcy Court, the sole issue on this appeal is whether the unpaid tax debts under the Illinois Use Tax Act are dischargeable in bankruptcy.
 

 
 *279
 
 II
 

 A resolution of this question requires a preliminary discussion of the treatment of taxes, to the extent relevant to the matter before us, under the Bankruptcy Reform Act of 1978. Both excise taxes and taxes on gross receipts are dischargeable if they became due more than three years prior to filing of a bankruptcy petition. 11 U.S.C. §§ 507(a)(6)(E) (“Section E”), (A).
 
 [1]
 
 Section 507(a)(6)(C) (“Section C”), however, describes certain types of taxes which are to be given priority without any limitation upon the time when they became due; and taxes within that section are also included in the exceptions to discharge listed in 11 U.S.C. § 523(a)(1)(A).
 
 [2]
 
 These taxes, which may never be discharged, no matter how “stale” they become, are those “required to be collected or withheld and for which the debtor is liable in whatever capacity.” 11 U.S.C. § 507(a)(6)(C).
 

 The broad language of Section C has given rise to certain problems of interpretation, since some of the excise taxes referred to in Section E may also be taxes on retail sales collected by retailers on behalf of purchasers. This seeming ambiguity has led one court to conclude that all sales taxes should be treated as excise taxes and thus dischargeable when stale.
 
 In re Tapp,
 
 16 B.R. 315 (Bkrtcy.D.Alaska 1981). Other courts have concluded that sales taxes collected by retailers are not dischargeable.
 
 In re Fox,
 
 609 F.2d 178 (5th Cir.),
 
 cert. denied,
 
 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980);
 
 Lawrence v. Lindley,
 
 65 Ohio St.2d 105, 418 N.E.2d 1351 (1981).
 

 The legislative history of Section C is somewhat confusing. It is clear that Section C was intended to include the so-called “trust fund taxes” — a term of art which includes income taxes an employer is required to withhold from employees’ pay and the employees’ share of social security taxes,
 
 see, e.g.,
 
 S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. However, the plain language of Section C is not confined to “trust fund taxes.” It is true, and it is appellants’ strongest contention, that the floor manager of H.R. 8200, which ultimately became the new bankruptcy code,
 
 [3]
 
 referred only to such traditional “trust fund taxes” when discussing Section C; and, when he described the excise taxes covered by Section E, he specifically listed sales taxes.
 
 [4]
 
 124 Cong.ReC. 32,415, 32,416 (re
 
 *280
 
 marks of Rep. Edwards, September 28, 1978). On the other hand, Representative Edwards did not state that sales taxes or excise taxes were intended to be excluded from Section C nor did he say that sales taxes collected by a retailer must be treated under Section E.
 

 In the Senate, Section C was discussed in the reports of two separate committees, the Committee on the Judiciary and the Committee on Finance. Both these reports specified that sales taxes collected by a retailer were intended to fall within the coverage of Section C. The Senate Finance Committee’s report
 
 [5]
 
 stated that Section C “also includes [in addition to trust fund taxes] excise taxes which a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.” S.Rep. No. 1106, 95th Cong., 2d Sess. 16 (1978). The Senate Judiciary Committee’s report contains identical language. S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978). The Senate reports thus underline the fact that there are really two types of sales tax liabilities at issue: those which are owed personally by a debtor, for example, on purchases he himself has made, and those incurred by a retailer’s customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state. In relation to the latter, the retailer in fact appears to be holding for the benefit of the state, taxes which his customers would otherwise owe — an obvious similarity to the income and social security taxes (“trust fund taxes”) which are unquestionably covered by Section C.
 

 In re Tapp,
 
 16 B.R. 315, cited to us by the debtors here as direct authority for the dischargeability of sales taxes over three years due, does not attempt to make this important distinction between taxes personally owed and those owed by a retailer as a collector for the state. Instead,
 
 Tapp
 
 relies heavily on floor manager Representative Edwards’ comments and ignores the Senate reports discussed above. The Bankruptcy Court’s opinion also omits, for whatever reason, any discussion of prior judicial interpretations of the comparable section of the predecessor statute, Section 17a(l) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1). Section 17a(l) provided that taxes “which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over” were not dischargeable in bankruptcy. 11 U.S.C. § 35(a)(1)(e). Interpreting this provision, which is very similar to the present Section C, the Fifth Circuit has held that not only social security and income taxes but also state sales taxes collected by sellers from purchasers are nondischargeable.
 
 In re Fox,
 
 609 F.2d at 181. The
 
 Fox
 
 court’s conclusion was followed by the Ohio Supreme Court in
 
 Lawrence v. Lindley,
 
 418 N.E.2d at 1353. We think it appropriate to rely upon these precedents, as well as upon our impression that the two Senate reports, which are consistent with each other, provide an indication of congressional intent which is both more reliable and more complete than the inexplicably differing statements of the House floor manager. We also, of course, rely on the plain language of Section C to conclude that excise taxes which a retailer has collected from purchasers are nondischargeable despite their age.
 

 Ill
 

 The Illinois Use Tax Act, under which the obligations at issue here arise, falls squarely within the language of Section C, once we have concluded that it was intended to include taxes on retail sales as well as social security and withholding taxes. A tax falls within Section C if (1) it is required to be collected or withheld, and (2) the debtor is liable for it in whatever capacity. 11 U.S.C. § 507(a)(6)(C). The Illinois Use Tax is clearly one which is “required to be collected,” since section 439.3 of the Use Tax Act states that “[t]he tax hereby imposed
 
 shall be collected
 
 from the purchaser
 
 *281
 
 by a retailer ... and remitted to the Department,” and further that "[rjetailers
 
 shall collect
 
 the tax from users by adding the tax to the selling price of tangible personal property....” Ill.Rev.Stat. ch. 120, § 439.3. Second, the Use Tax is plainly one “for which the debtor is liable,” as section 439.8 of the Use Tax Act states that “any such tax collected by any retailer shall constitute a debt owed by the retailer to this State.... ” Ill.Rev.Stat. ch. 120, § 439.8.
 
 [6]
 
 Indeed, when the Use Tax has been collected and subsequently commingled with the seller’s own funds, the Illinois Supreme Court has upheld the imposition of a constructive trust upon property purchased with those funds.
 
 People ex rel. Scott v. Pintozzi,
 
 50 Ill.2d 115, 277 N.E.2d 844, 853 (1971).
 

 IV
 

 Under usual circumstances, our analysis to this point might dispose of the two cases before us, sweeping them definitively into the category of nondischargeability under Section C. However, the appellants argue that the Illinois Use Tax Act is essentially a fiction. The Use Tax, they assert, is merely a way to collect the equivalent of the Illinois Occupation Tax with respect to purchases out of state of goods for use in Illinois. Thus, the argument runs, we should ignore the form of the Use Tax in favor of the underlying substance of the Occupation Tax and conclude, because the latter is discharged in bankruptcy when stale, that the former should be as well.
 

 We have no quarrel with appellants’ account of the origins and purpose of the Illinois Use Tax Act, for which there is plentiful evidence.
 
 See, e.g.,
 
 Ice,
 
 The Retailer s’ Occupation Tax Act and Related Tax Laws,
 
 1961 Ill.Law Forum 614, 617. As the Illinois Supreme Court has stated in a case upholding the constitutionality of the Use Tax Act:
 

 Use taxes were developed, as the plaintiff points out, to prevent evasion of the tax that applies when retail purchases are made within the State, and to protect the local retail merchant against diversion of his business to out-of-State sellers. Those are the purposes of the present tax.
 

 Turner v. Wright,
 
 11 Ill.2d 161, 142 N.E.2d 84, 87 (1957). The Use Tax and the Occupation Tax thus were designed to be complementary; although the Illinois Constitutional requirement of uniformity mandated that the Use Tax be imposed on all purchases of personal property to be used in the state, the retailer is relieved of his debt to the state under the Use Tax Act if the Occupation Tax has been paid on the same transaction. Ill.Rev.Stat. ch. 120, § 439.8;
 
 [7]
 

 see also People ex rel. Scott v. Pintozzi,
 
 277 N.E.2d at 853. Thus the Use Tax would normally be paid only on out-of-state purchases.
 

 It is true, moreover, that the taxes paid under the two acts are more similar in their substance than different. Both are in fact paid by retailers to the State of Illinois with monies collected by adding 4% to the price of every retail sale. Yet the Occupation Tax is in form a gross receipts tax, levied on the retailer rather than on the purchaser,
 
 [8]
 
 and as such presumably dischargeable under 11 U.S.C. § 507(a)(6)(A). At any rate, the parties before us have apparently agreed that obligations under the Occupa
 
 *282
 
 tion Tax Act are dischargeable, so that we need not consider whether the substance of the Occupation Tax is not equally that of a sales tax collected by the retailer from the customer and held in trust for the state.
 

 However, even accepting as given the real similarity of the two taxes and the dischargeability of obligations under the Occupation Tax Act, appellants’ conclusion that the Use Tax must be dischargeable in bankruptcy does not follow. The history and relationship of the two acts may be informative about problems created by the uniformity requirement of the Illinois Constitution and the economics of retail sales, but they do not control how obligations under the two laws are to be treated in bankruptcy. Once we have concluded, as we have above, that Congress intended that sales taxes required to be collected by a retailer, for which he is liable, be included in the category of taxes which are nondis-chargeable under Section C, the conclusion that the Use Tax here is nondischargeable follows syllogistically:
 

 1. If a tax falls within Section C, it is nondischargeable.
 

 2. The Illinois Use Tax by its terms falls within Section C.
 

 3. A retailer is relieved of the Use Tax obligation only if the Occupation Tax has been paid.
 

 4. The debtors in this case have not paid their Illinois Retailers’ Occupation Tax.
 

 5. Therefore they remain liable for the Use Tax obligation (per 3, above).
 

 6. Therefore the unpaid obligations under the Use Tax Act in this case are not dischargeable (per 1 and 2, above).
 

 In summary, we think this result is indicated by the plain language of Section C of the Bankruptcy Code and by the structure of the Illinois Use Tax Act. We therefore hold that the obligations of the two debtors here under the Illinois Use Tax Act are nondischargeable in bankruptcy. Since this is the only issue we understand to be before us, neither the amount of the tax due nor whether it was actually collected by the retailers
 
 [9]
 
 having been challenged below, the judgments of the bankruptcy courts are affirmed.
 

 [1]
 

 . Sections 507(a)(6)(A) and (E), describing priorities in bankruptcy, read in pertinent part as follows:
 

 (6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—
 

 (A) a tax on or measured by income or gross receipts—
 

 (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition,
 

 [[Image here]]
 

 (E) an excise tax on—
 

 (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition. ...
 

 11 U.S.C. §§ 507(a)(6)(A), (E).
 

 [2]
 

 . Section 523 reads in pertinent part as follows:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (1) for a tax or a customs duty—
 

 (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title....
 

 11 U.S.C. § 523(a)(1)(A).
 

 Section 507(a)(6)(C) provides that sixth priority shall also be given to:
 

 unsecured claims of governmental units, to the extent that such claims are for—
 

 [[Image here]]
 

 (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity.
 

 11 U.S.C. § 507(a)(6)(C).
 

 [3]
 

 . For the many versions and revisions of the Bankruptcy Reform Act, see Klee,
 
 Legislative History of the New Bankruptcy Code,
 
 54 Am. Bankr.L.J. 275 (1980).
 

 [4]
 

 . There is no question that a “sales tax” is an excise tax levied at the retail level. In Black’s Law Dictionary 506 (5th ed. 1979), “excise” is defined' as “[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege (citations omitted). Tax laid on manufacture,
 
 sale,
 
 or consumption of commodities....” (emphasis supplied).
 

 [5]
 

 . Much of Section 507(a)(6) as it was enacted after a great deal of debate conformed to the views held by the Senate Finance Committee, 3 L. King, Collier on Bankruptcy ¶ 507.04[6] (15th ed. Supp.1982).
 

 [6]
 

 .
 
 The obligation does remain primarily the obligation of the purchaser, however, who remains liable for the tax if the seller fails to collect it.
 
 See Pennwalt Corp. v. Metropolitan Sanitary District,
 
 368 F.Supp. 972, 978 (N.D.Ill.1973), and cases cited therein.
 

 [7]
 

 . Section 439.8 provides that taxes collected under the Use Tax Act
 

 shall constitute a debt owed by the retailer to this State, except when such retailer is relieved of the duty of remitting such tax to the Department by virtue of his being required to pay, and his in fact paying, the tax imposed by the “Retailers’ Occupation Tax Act” upon his gross receipts from the same transaction.
 

 Ill.Rev.Stat. ch. 120, § 439.8.
 

 [8]
 

 . The Illinois Retailers’ Occupation Tax is described as a tax
 

 imposed upon persons engaged in the business of selling tangible personal property at retail ... at the rate of 4% of the gross receipts from such sales....
 

 Ill.Rev.Stat. ch. 120, § 441.
 

 [9]
 

 . The
 
 Fox,
 
 609 F.2d at 182, and
 
 Lawrence v. Lindley,
 
 418 N.E.2d at 1353, courts held that amounts not actually collected were discharged.