**In re TAYLOR TOBACCO ENTERPRISES, INC., d/b/a Taylor Manufacturing Company, Debtor.**

**No. 88–979–CIV–5.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Oct. 9, 1989.

Newton G. Pritchett, Jr., Asst. Atty. Gen., Raleigh, N.C., for appellant N.C. Dept. of Revenue.

James O. Carter, Carter & Carter, Wilmington, N.C., for James O. Carter, Trustee.

Algernon L. Butler, Wilmington, N.C., for debtor.

### ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the undersigned judge on appeal by the North Carolina Department of Revenue from an adverse order and memorandum opinion of the United States Bankruptcy Court for the Eastern District of North Carolina. The order in the underlying bankruptcy cause accorded priority status to sales taxes collected by the debtor, but denied priority status to sales taxes that had not been collected by

the debtor. This court reviews the bankruptcy court's legal determinations *de novo. Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1307 (5th Cir.1985) (per curiam).

Taylor Tobacco Enterprises, Inc., was a manufacturer of farming equipment that filed a Chapter 7 petition for bankruptcy on March 4, 1983. The North Carolina Department of Revenue filed a proof of claim for unpaid taxes amounting to $73,194.15. Included in this total were $27,774.95 of sales and use taxes that Taylor had collected from its customers and $19,163.14 that had not been collected. The Department of Revenue claimed a priority of payment over the sales taxes pursuant to 11 U.S.C. § 507(a)(7)(C), which accords priority status to taxes required to be collected by a party and held for the government. Through its trustee, Taylor contended that the taxes should be considered excise taxes and accorded the limited priority of § 507(a)(7)(E), which would result in priority status being accorded to only those taxes for which a return was last due within three years of the filing of the petition.

After examining the conflict between the trust fund and the excise provisions of § 507(a)(7), the bankruptcy court held that those taxes which had been collected had formed a trust *res* and were accorded unlimited priority status, but that the uncollected taxes were to be accorded the limited priority of the three years prior to the filing of the bankruptcy petition. The Department of Revenue appealed this order to claim that the bankruptcy court erred in using the collected/uncollected status of the taxes as an element in determining their priority status. Taylor argues that its entire sales tax debt should be accorded limited priority status.

The Code provision in question is § 507(a), which governs the priority of payment of non-dischargeable claims against a debtor.[1] Section 507(a) consists of seven categories listed in descending order of priority, each of which qualifies as an exception to discharge under 11 U.S.C. § 523(a)(1). The claims of governmental units, primarily for tax debts, is the seventh priority[2] and is further divided into subsections. There are two subsections that apply to the issue in question: § 507(a)(7)(C), the trust fund provision[3] ("Section C"), and § 507(a)(7)(E), the excise tax provision ("Section E"). Section C grants complete priority status to a "tax required to be collected or withheld." Section E gives an excise tax a priority status

1. Sections 507(a)(7)(C) and 507(a)(7)(E) provide:

   (a) The following expenses and claims have priority in the following order:

   \* \* \* \* \* \*

   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

   \* \* \* \* \* \*

   (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

   \* \* \* \* \* \*

   (E) an excise tax on—
   (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
   (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition....
   11 U.S.C. § 507(a)(7)(C)(E).

2. In original form, section 507 consisted of six categories. When the 1984 amendment added a seventh category, the governmental claims exception to discharge was renumbered from section 507(a)(6) to section 507(a)(7). Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, section 350(2), 98 Stat. 333, 358. The provision is otherwise unchanged.

3. The term trust fund taxes is a term of art which includes taxes an employer is required to withhold from an employee's pay, such as income taxes or social security taxes. *See* S.Rep. No. 989, 95th Cong., 2nd Sess. 71 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. "The withheld sums are commonly referred to as 'trust fund taxes,' reflecting the Code's provision that such withholdings or collections are deemed to be a 'special fund in trust for the United States,' 26 U.S.C. § 7501(a)," *Slodov v. United States,* 436 U.S. 238, 244, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). However, the "required to be collected or withheld" language of Section C contemplates a wider array of taxes than those to be held in a trust fund for the government. *In re Rosenow,* 715 F.2d 277, 279 (7th Cir.1983); *DeChiaro v. New York State Tax Comm'n,* 760 F.2d 432, 434 (2nd Cir.1985).

limited only when the transaction underlying the tax occurred less than three years prior to the date on which the bankruptcy petition was filed.

Collected sales taxes have been held to fall within the unlimited trust fund priority of Section E by three appellate courts. *Rosenow v. State of Illinois Department of Revenue,* 715 F.2d 277 (7th Cir.1983); *DeChiaro v. New York State Tax Commission,* 760 F.2d 432 (2nd Cir.1985); *In re Shank,* 792 F.2d 829 (9th Cir.1986) (applying the State of Washington tax code). Each of the courts in these cases found that the resolution of the question required an examination of the legislative history of Sections C and E because the "statutory language plainly creates an overlap between the provisions for trust and excise taxes." *DeChiaro,* 760 F.2d at 435. This overlap occurs because a tax, such as the sales tax at issue here, may be an excise tax but also one that is required to be collected by the retailer and then owed by the retailer to the government. *Rosenow,* 715 F.2d at 279, 280; *DeChiaro,* 760 F.2d at 435.

The legislative history relating to the question of which section should apply to a sales tax is illuminating, but inconclusive. The predecessor to § 507 was § 17(a)(1) of the Bankruptcy Act, which itself was the product of an amendment limiting the prior rule that any tax levied by a government was excepted from discharge. Act of July 5, 1966, Pub.L. No. 89-496, § 2, 80 Stat. 270. The amended § 17(a)(1) placed a three-year time bar on unpaid taxes beyond which all "state" taxes were dischargeable. The amendment also created a number of exceptions to the time bar, among which was § 17(a)(1)(e), which provided that "any taxes ... which the bankrupt has collected or withheld from others as required by [law], but has not paid over" were not limited by the time bar.

When Congress created the new Bankruptcy Code, it reached an impasse on the revision of § 17. In an initial draft, the House proposed that trust fund taxes were to be limited to a two-year time bar and that excise taxes were to be limited to a one-year time bar. H.R. 8200, 95th Cong.,

1st Sess. 357–358 (1977), 124 Cong.Rec. 1804 (1978). At the same time, the Senate proposed that taxes required to be collected or withheld were to be nondischargeable in their entirety, subject to no limitation. S. 2266, 95th Cong. 2d Sess. (1978), 124 Cong. Rec. 28,284 (1978).

The Senate and House also disagreed as to whether sales taxes were to be included as trust or excise taxes. The Senate report accompanying its version of Section C explicitly included sales taxes within the trust provisions. S.Rep. No. 989, 95th Cong., 2nd Sess. 68–73 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. However, the Senate proposal did not mention excise taxes at all.

After a conference committee considered the matter, the differing proposals were integrated into a compromise joint amendment. This compromise was subsequently passed by both houses to become the trust fund and excise tax provisions included in the present § 507: trust fund taxes are accorded unlimited priority while excise taxes are limited by the three-year time bar. As a result, the plain language of § 507(a)(7)(C) seems to widen the scope of the trust fund tax definition. Instead of the "any taxes ... which the bankrupt has collected" language of § 17(a)(1)(e), the revised § 507(a)(7)(C) definition includes "any taxes required to be collected."

However, the remarks of the legislators who drafted § 507 do not consistently reflect the conclusion that Section C was broadened. The legislative history of the compromise agreement is found in the Joint Statement of Senator DeConcini and Representative Edwards, 124 Cong.Rec. 33,989 (1978) (Senate); 124 Cong.Rec. 32,-350 (1978) (House). The definition of the trust fund category in the Joint Statement was retained in nearly identical language to the definition in the Senate report, except that the explicit inclusion of sales tax within its scope had been omitted. Moreover, the definition accompanying the excise tax definition of subsection E specifically included sales tax. 124 Cong.Rec. 34,016 (1978) (Senate), 124 Cong.Rec. 32,-

416 (1978) (House). See *DeChiaro*, 760 F.2d at 436; *Shank*, 792 F.2d at 832.[4]

After reviewing the legislative history, the *Rosenow* court framed the issue by concluding that a "tax falls within Section C if (1) it is required to be collected or withheld, and (2) the debtor is liable for it in whatever capacity." 715 F.2d at 280. After stating that it found the Senate reports to be more reliable than the House reports, the court relied on the plain language of Section C to hold that excise taxes collected from a third party are nondischargeable. *Id.*

The *DeChiaro* court held that because Congress selected the broader Senate version of Section C over the more limited House version, "Congress intended to differentiate between two categories of excise taxes and that the trust fund provision excepts from discharge those excise taxes required to be collected from third parties." 760 F.2d at 435. The *Shank* court agreed with this analysis, supporting its conclusion with considerations of public policy: a "failing retailer should not be given incentive to default on sales tax obligations," which would exist if the obligations could be discharged by filing for bankruptcy three years after the default occurred. 792 F.2d at 832.

At best, the statutory language causing the overlap between Sections C and E provides, as the *DeChiaro* court said, "both sides with a plausible argument." 760 F.2d at 435. The commentary describing the legislative process behind the creation of § 507(a) leads to the conclusion that though there is evidence in the Joint Statement to justify the argument that the excise tax provision of Section E was intended to cover sales taxes, that evidence is not of great

enough weight to outweigh the change in the statutory language that expands the definition of Section C from the actual collection requirement of § 17(a)(1) to the "required to be collected" standard of Section C. Section C as enacted was the product of the Senate's broader proposal, not the House's more limited version. *DeChiaro*, 760 F.2d at 436. Moreover, the Congress never made any reference to changing the law from § 17(a)(1), which be "a significant about-face in [Congress'] treatment of sales taxes collected from third parties." *Shank*, 792 F.2d at 833. Likewise, a holding that would allow collected sales to be limited by a three-year time bar would create the perverse incentive described in *Shank* of encouraging the default of sales tax obligations, which would militate against public policy of ensuring that taxes are paid.

This court finds that the N.C. sales tax is one that is required to be collected from purchasers. G.S. § 105–164.7 provides as follows:

> "*Every retailer* engaged in the business of selling or delivering or taking orders for the sale or delivery of tangible personal property for storage, use or consumption in this State *shall* at the time of selling or delivering or taking an order for the sale or delivery of said tangible personal property or collecting the sales price thereof or any part thereof, *add to the sales price* of such tangible personal property *the amount of the tax* on the sale thereof *and* when so added *said tax shall constitute a part of such purchase price, shall be a debt from the purchaser to the retailer until paid and shall be recoverable at law in the same manner as other debts. Said tax shall be*

---

4. In an excellent review of the legislative history of § 507, Circuit Judge Reinhardt dissented from the majority holding of *Shank*. Pointing out that the remarks of the Joint Statement accompanying the amended § 507 "*is* the legislative history of the Bankruptcy Code as enacted" (emphasis in original), Judge Reinhardt focussed on the passage in the Joint Statement that "[a]ll Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including *sales taxes*, estate and gift taxes, gasoline and special fuel

taxes, and wagering and truck taxes." 124 Cong.Rec. 34,016 (Senate), 124 Cong.Rec. 32,416 (House), (emphasis added), *quoted in Shank*, 792 F.2d at 834 (Reinhardt, C.J., dissenting). The dissent also emphasized the omission of excise taxes from the Joint Statement. *Id.* at 835.

Two bankruptcy courts found this argument persuasive in holding that collected sales taxes were to be treated under Section E. *In re Tapp*, 16 B.R. 315 (Bankr.D.Alaska 1981); *In re Boyd*, 25 B.R. 1003 (Bankr.S.D.Ohio 1982).

*stated and charged separately* from the sales price and shown separately on the retailer's sales records *and shall be paid by the purchaser to the retailer as trustee for and on account of the State and the retailer's failure to charge to or collect said tax from the purchaser shall not affect such liability."* (emphasis added).

The North Carolina statute is interpreted to characterize the sales tax as "privilege tax," *Fisher v. Jones,* 15 N.C.App. 737, 190 S.E.2d 663 (1972), that is imposed on the retailer, *Rent–A–Car Co. v. Lynch,* 39 N.C. App. 709, 251 S.E.2d 917, rev'd on other grounds, 298 N.C. 559, 259 S.E.2d 564 (1979). However, N.C. § 105–164.7 states that:

"It is the purpose and intent of this Article that the tax herein levied and imposed shall be added to the sales price of tangible personal property when sold at retail and thereby be borne and passed on to the customer, instead of being borne by the retailer."

*See also, Rent–A–Car Co. v. Lynch, supra.* The commerce clause's prohibition of the burdening of interstate commerce lends additional support to the conclusion that it is the buyer from whom the tax is ultimately collected. The North Carolina sales tax cannot constitutionally be imposed on interstate sales, *In re Assessment of Additional N.C. & Orange County Use Taxes,* 312 N.C. 211, 322 S.E.2d 155 (1984). If the tax were on the sale and a completely internal excise tax, then it would be applicable regardless of where delivery takes place. The tax operates as a tax on the purchase, in which the nature of the buyer as a purchaser in or out of North Carolina decides whether the tax will be collected by the retailer. The order of the bankruptcy court allowing the priority status to the collected sales taxes is AFFIRMED.

To consider the status of uncollected sales taxes under § 507(a) is to consider a novel interpretation of law. The court is unaware of any legislative history providing guidance on the matter. The Bank-

ruptcy Judge noted that none of the decisions cited above addressed the status of uncollected sales taxes. *Memorandum opinion* at 4.

Prior to the enactment of § 507, uncollected sales taxes were not given the unlimited trust fund priority status. *In re Fox,* 609 F.2d 178, 182 (5th Cir.), *cert. denied* 449 U.S. 821, 101 S.Ct. 78, 66 L.Ed.2d 23 (1980). However, the statute involved in *Fox* was § 17(a)(1). The holding in *Fox* resulted from the language of § 17(a)(1) by which a debtor was not released from taxes "which the bankrupt *has collected* or withheld." Section 17(a)(1)(e) (emphasis supplied).

The language of Section C does not refer to whether the taxes have been collected, but instead applies to taxes "required to be collected or withheld." The Bankruptcy Court was correct in noting that the legislative history is silent as to an explanation for the change in language. *Memorandum opinion* at 6. However, the lack of an explanation for a change in language does not denigrate the fact that a change in the language has occurred. The requirement of actual collection was the provision on which the *Fox* court held that priority status for uncollected sales taxes was to be denied. 609 F.2d at 185. Moreover, the observation of the *DeChiaro* court that the broader language of the Senate version was the provision selected to become Section C supports the conclusion that the uncollected sales taxes are no longer dischargeable under Section E if they are required to be collected under Section C.

The same considerations of public policy discussed in *Shank* apply to uncollected sales taxes. Just as an incentive to default on taxes collected by a retailer is created by allowing discharge of state claims, an incentive not to collect taxes is created by the same limitation of liability. Under the North Carolina taxation chapter, the failure to collect sales tax does not relieve the retailer of liability for the uncollected taxes. G.S. 105–164.7; 105–253(b)(2). The retailer is required to add the sales tax to the

446

purchase price and it is a misdemeanor for a retailer to offer to absorb the sales tax for the customer. G.S. 105–164.7; 105–164.9. *See, Rent–A–Car v. Lynch*, 39 N.C. App. at 712; 251 S.E.2d at 920. To allow a retailer to mitigate the consequences of failing to collect sales tax by using a bankruptcy proceeding to avoid paying uncollected sales taxes older than three years would be to create an incentive as perverse as the incentive considered in *Shank*, 792 F.2d at 832. The purpose of the Bankruptcy Code is "to allow a fresh start to the bankrupt." *Fox*, 609 F.2d at 182. That purpose does not include using the Code as a shield for dishonest or devious behavior.

The so-called "trust fund" exception to discharge does not permit the payment of collected or uncollected sales taxes to be limited to three years before the filing bankruptcy. The term "trust fund" exception is a term of art encompassing more types of taxes than ordinarily would be considered under principles of trust law. The language of § 507(a)(7)(C) contemplates unlimited priority to any tax required by law to be collected from a third party, whether a trust *res* exists or not. Nothing in the legislative history supports the opposite inference, nor can considerations of public policy be said to mitigate against the plain language of Section C. The portion of the bankruptcy court's opinion that accords excise tax priority to uncollected sales taxes is REVERSED with instructions to accord unlimited priority to them under § 507(a)(7)(C).

SO ORDERED.