**OFFICIAL COMMITTEE OF the UNSECURED CREDITORS OF WHITE FARM EQUIPMENT COMPANY, Plaintiff/Appellant,**

v.

**UNITED STATES of America, Defendant/Appellee.**

**No. 89 C 7489.**

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1990.

Joseph L. Matz, Karla A. Schreiber, Holleb & Coff, Chicago, Ill., for plaintiff/appellant.

Victoria S. Crosley, Special Asst. U.S. Atty., Chicago, Ill., Jeffrey N. Kaplan, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant/appellee.

## AMENDED MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This bankruptcy appeal seeks resolution of the question of whether priority status granted under 11 U.S.C. § 507(a)(7)(C) survives a serial Chapter 11 (11 U.S.C. § 1101 *et seq.*) filing where the initial Chapter 11 proceeding ended in a confirmed plan that included the priority debt. The Appellant ("the Committee") contends that it does not and the Appellee ("IRS") contends that it does.

Specifically at issue is whether the IRS' priority claim for withholding taxes for certain quarters in the tax year 1980 plus accrued interest owed by the debtor, White Farm Equipment Company ("WFE"), which was listed in the original plan of reorganization, is entitled to statutory priority in a subsequent Chapter 11 proceeding.

## FACTS

On September 4, 1980 WFE filed a voluntary petition for reorganization under Chapter 11. On May 12, 1981 the IRS filed a Proof of Claim for withholding and FICA taxes pursuant to Section 507(a)(6) (since renumbered to Section 507(a)(7)).

Section 507 provides in pertinent part as follows:

"Section 507 Priorities

(a) The following ... claims have priority in the following order

\* \* \* \* \* \*

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

\* \* \* \* \* \*

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;"

\* \* \* \* \* \*

On October 31, 1981 the first amended Plan of Reorganization was confirmed. The plan contemplated the continued operation of the business of the Debtor by the reorganized Debtor and provided that "[a]ll claims of governmental units entitled to priority under [Section 507(a)(7)] shall receive deferred cash payments over a six-year period in equal annual installments commencing 90 days after confirmation of the Plan in accordance with the provisions of Sec. 1129(a)(9)(C) of the Bankruptcy Code."

Section 1129(a)(9)(C) provides in pertinent part as follows:

"Section 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

\* \* \* \* \* \*

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

\* \* \* \* \* \*

(C) with respect to a claim of a kind specified in Section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash pay-

ments, over a period not exceeding six years after the date of assessment of such claim, of a value as of the effective date of the plan, equal to the allowed amount of such claim."

Apparently very little, if any, of the claim of the IRS was paid subsequent to the reorganization. On May 20, 1985 an involuntary petition under Chapter 7 (11 U.S.C. § 701 et seq.) was filed against the reorganized Debtor ("WFE II"). This proceeding was converted into a voluntary Chapter 11 case on June 14, 1975.

On September 17, 1986 the IRS filed the instant claim for the remaining taxes due it under the original Reorganization Plan of October 31, 1981. The IRS contends that its current claim is entitled to Section 507(a)(7) priority status in the current Chapter 11 case. The Committee filed an objection contending that the claim of the IRS is no longer entitled to priority status but must be treated as a general unsecured claim.

The theory of the Committee is that once a plan of reorganization is confirmed a corporate debtor such as WFE is discharged from any debt that arose before the date of confirmation by operation of Section 1141 and the claim of the IRS arose before October 31, 1981, the date the first amended Reorganization Plan was confirmed. Therefore the current claim of the IRS arises from the Plan of Reorganization rather than a Section 507, seventh priority, and as such does not receive priority.

The pertinent provisions of Section 1141 are as follows:

"Section 1141. Effect of confirmation.

\* \* \* \* \* \*

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan

(A) discharges the debtor from any debit that arose before the date of such confirmation ...

\* \* \* \* \* \*

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under Section 523 of this title." (emphasis supplied)

The pertinent provisions of Section 523 are as follows:

"Section 523. Exceptions to discharge. (a) A discharge under ... Section 1141 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax ...

(A) of the kind and for the period specified in ... Section 507(a)(7) of this title ..." (emphasis supplied)

The IRS makes two responses to all of this. First, citing Rosenow v. State of Ill. Dept. of Revenue, 715 F.2d 277 (7th Cir. 1983), the IRS contends that Section 507(a)(7)(C) gives a priority to a claim for withholding taxes which can never be discharged. Second, it contends that since the Plan of Reorganization by statutory requirement (Section 1129(a)(9)(C)) provided for full payment of its claim, Section 1141(d)(1) does not operate as a discharge.

The Bankruptcy Judge sided with the IRS essentially holding that by its plain wording Section 507(a)(7) makes certain types of taxes, such as the ones involved here, "a priority without any limitation upon the time when they become due." In re White Farm Equipment Co., 103 B.R. 177 (Bankr.N.D.Ill.1989), quoting Rosenow, 715 F.2d at 279.[1]

### DISCUSSION

The Bankruptcy Code shows that the drafters intended to treat individual and corporate debtors differently with respect to discharge of past due taxes. Section 507 indisputedly gives the IRS a priority claim for unpaid withholding taxes owed by either an individual or corporate debtor. Although Section 523 makes certain debts, including withholding taxes, non-dischargeable but its provisions apply only to individual debtors. Yamaha Mtr. Corp. v. Shadco, Inc., 762 F.2d 668 (8th Cir.1985); In re White Farm Equipment Co., at 179 n. 2.

1. However Rosenow involved only individual debtors. 715 F.2d at 279.

The Bankruptcy Judge however felt that Section 523 was irrelevant because the question was one of time limitations rather than dischargeability. *Id.* This interpretation however seems to render Section 523 a nullity: if a tax claim can never lose its priority under Section 523 then it would not be necessary by statute to make it nondischargeable. Stated another way, if the drafters thought that the IRS would never lose its priority over an unpaid tax claim because of the provisions of Section 507, then it would not be necessary to prohibit discharge to individual debtors.

Further, since Section 507 gives the IRS a priority for taxes owed by both individual and corporate debtors and Section 523 specifically provides that only individual debtors may not be discharged from tax debts by a Section 1141 Plan of Reorganization (*Matter of Cash Currency Exchanges, Inc.*, 762 F.2d 542, 552 (7th Cir.1985), *cert. denied, Fryzel v. Cash Currency Exchange, Inc.*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985)), normal rules of statutory construction require a strong inference that a Section 1141 Plan of Reorganization may therefore discharge a corporate debtor from such a priority debt. The inference that corporate debtors could be discharged from priority debts is particularly strong here because Section 1141(d)(1)(A) provides generally for discharge of corporate and individual debtors of any debt that arose prior to plan confirmation. Section 1141(d)(2) on the other hand prohibits discharge of an individual debtor from any debt excepted from discharge under Section 523.

The actual legislative history of the Bankruptcy Reform Act of 1978 demonstrates that what is inferred above is what was actually intended by Congress. The Act itself resulted from a House Bill that was passed, in lieu of a Senate Bill, after it was amended to contain much, but not all, of the text of the Senate Bill. *U.S.Code Cong. & Admin.News 1978*, p. 5787.

2. There is, of course, a sound reason for treating corporate and individual taxpayers differently. If the corporation does not pay the taxes,

In the original House version Section 1141 provided generally as it did in the final version: corporate debtors would receive general discharges from a reorganization plan and, by Section 1141(d)(2), the general exceptions to discharge contained in Section 523 were made applicable only to individual taxpayers. *Id.* at p. 6374. Subsequent to preliminary House action on the bill the Senate amended Section 1141(d)(2) so as to make it "clear what taxes remain nondischargeable in the case of a *corporate debtor* emerging from a reorganization under Chapter 11." (emphasis supplied) *Id.* at p. 5915 Among taxes specified as non-dischargeable were "priority taxes" named in Section 507. The final version adopted was however the House version. The reasons for Congress doing so were enunciated by Congressman Donald Edwards in a statement he made at the time the final House amendment to the Senate amendment was introduced.

"Section 1141(d) of the House amendment is derived from a comparable provision contained in the Senate amendment. However section 1141(d)(2) of the House amendment is derived from the House bill as preferable to the Senate amendment. It is necessary for a corporation or a partnership undergoing reorganization to be able to present its creditors with a fixed list of liabilities upon which the creditors or third parties can make intelligible decisions. *Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding reorganization that is unacceptable.*" (emphasis supplied)

*Id.*, pp. 6436, 6478.[2]

The final argument of the IRS is that since the plan required full payment of priority taxes, it "preserved" rather than discharged the tax liability. This argument however flies in the face of the plain reading of the statute and its legislative history outlined above.

the IRS has the option of collecting the tax from the individual who has actual control over payment of wages. 26 U.S.C. § 3401.

Since the liabilities created by the Plan of Reorganization are a new undertaking, the Bankruptcy Judge's own reasoning in *In re Jartran, Inc.*, 71 B.R. 938 (Bankr.N.D.Ill. 1987), *aff'd*, 87 B.R. 525 (N.D.Ill.1988) and *In re Jartran, Inc.*, 76 B.R. 123 (Bankr.N. D.Ill.1987) is appropriate:

"The provisions of a confirmed plan bind all parties whose rights are affected by the plan ... when, as here, substantial operations under a confirmed plan are followed by a second case, the entity's unpaid liabilities under the first case plan become general unsecured claims in the second case."

*In re Jartran, Inc.*, 76 B.R. at 125.

### CONCLUSION

Accordingly, the decision of the Bankruptcy Court affording priority status to Claim No. 1–17 of the IRS is reversed and the court holds that Claim No. 1–17 is an unsecured claim of the debtor in the current Chapter 11 proceeding.

IT IS SO ORDERED.