CUDAHY, Circuit Judge.
 

 Two years ago, in
 
 Fruehauf Corp. v. Jartran, Inc.,
 
 886 F.2d 859, 860 (7th Cir.1989), we were asked to pass upon “the novel question of the propriety of serial Chapter 11 bankruptcy filings.” Although the drafters of the Bankruptcy Code never envisioned a new Chapter 11 petition as a method of liquidation, we held that nothing in the Code precludes serial Chapter 11 filings. Our decision in
 
 Jartran
 
 spawned the interesting, almost metaphysical question that is before us now: whether a tax debt is stripped of its underlying character and transformed into a mere contractual obligation once it is incorporated in a confirmed plan of reorganization. Specifically, we must determine whether a priority claim for trust fund taxes retains its priority in a second Chapter 11 petition.
 

 I.
 

 Despite the complexity and significance of the legal issues involved, the facts underlying this case are fairly straightforward. On September 4, 1980, debtor White Farm Equipment Corporation (WFE I) petitioned for a voluntary reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101
 
 et seq.
 
 On May 12, 1981, the
 
 *754
 
 IRS filed a claim for over $300,000 in withholding and FICA taxes — termed “trust fund taxes” because employers must hold them in trust for the United States. Trust fund taxes are entitled to seventh priority under 11 U.S.C. § 507(a)(7). The first amended plan of reorganization was confirmed on October 31, 1981. The plan contemplated that the reorganized debtor (WFE II) would continue to operate the debtor’s business. The plan also promised that the IRS’ priority claim for trust fund taxes would be fully repaid over a six-year period in equal annual installments.
 
 [1]
 

 Apparently very little, if any, of the IRS’ tax claim was actually paid subsequent to reorganization. On May 20, 1985, an involuntary petition to liquidate the reorganized debtor, WFE II, was brought under Chapter 7,11 U.S.C. § 701
 
 et seq.
 
 This proceeding was converted into a voluntary Chapter 11 liquidation case approximately one month later.
 

 On September 17, 1986, the IRS filed a claim for the remaining trust fund taxes due to it under the WFE I plan. On November 5, 1987, the third amended plan of reorganization in WFE II was confirmed. A plan of liquidation, it provides that priority tax claims must be paid in full. The IRS maintains that its claim for trust fund taxes in WFE II is entitled to the same priority it received in WFE I because it arises from nonpayment of taxes due in WFE I. The Official Committee of Unsecured Creditors of White Farm Equipment Corporation (the Committee), however, contends otherwise. It argues that, once a plan of reorganization has been confirmed, the corporate debtor is discharged from any debt that arose prior to confirmation of the plan under 11 U.S.C. § 1141. According to the Committee, the IRS must now stand in line along with all other creditors because its claim for trust fund taxes is just a general unsecured claim for breach of the plan of reorganization.
 

 “Once a tax, always a tax,” was the bankruptcy court’s answer to this puzzling problem.
 
 In re White Farm Equipment Co.,
 
 103 B.R. 177, 181 (N.D.Ill.1989). The bankruptcy court carefully distinguished our decision in
 
 Jartran,
 
 886 F.2d 859, which held that an administrative claim was not entitled to retain its administrative priority in a second Chapter 11 proceeding. In essence, the bankruptcy court confined
 
 Jartran
 
 to its facts, stating: “[T]he liability for the taxes was not created by the plan, is not affected by the plan and is not terminated when the plan terminates ... [because] these tax obligations [are] more similar to a secured lien which is intended to survive bankruptcy unaffected than to an administrative claim which is created only for the purposes of a specific bankruptcy proceeding.”
 
 In re White Farm,
 
 103 B.R. at 180. Ruling that under section 507(a)(7) trust fund taxes “ ‘are to be given priority without any limitation upon the time when they became due,’ ”
 
 id.
 
 at 179 (quoting
 
 Rosenow v. State of Illinois Dept. of Revenue,
 
 715 F.2d 277, 279 (7th Cir.1983)), the bankruptcy court accordingly held that their priority survives a second Chapter 11 filing.
 

 The district court reversed. 111 B.R. 158. Focusing only upon the language of 11 U.S.C. § 523, which provides an exception for
 
 individual
 
 debtors to the general rule that the confirmation of a reorganization plan under section 1141 discharges all debts that arose before the date of confirmation, the district court drew the negative inference that the priority tax debt of a
 
 corporate
 
 debtor must be discharged by a plan of reorganization. Because we agree with the bankruptcy court that a serial Chapter 11 filing does not divest trust fund taxes of their priority, we reverse.
 

 II.
 

 A.
 
 Appellate Jurisdiction
 

 To reach the merits of this case, we must overcome the preliminary hurdle of jurisdiction. Bankruptcy appeals, like
 
 *755
 
 other appeals, generally demand finality below. 28 U.S.C. § 158(d).
 
 [2]
 
 But the concept of finality operates somewhat loosely in the bankruptcy context: certain bankruptcy orders may be deemed final before the estate is entirely closed.
 
 See Jartran,
 
 886 F.2d at 861 (characterizing bankruptcy appeals as possessing a “somewhat relaxed sense of finality”);
 
 In re Fox,
 
 762 F.2d 54, 55-56 (7th Cir.1985). Because the briefs inadequately dealt with the question of finality, we requested supplemental briefing with respect to jurisdiction. We conclude that appellate review is proper in this case.
 

 Disposition of a creditor’s claim in bankruptcy is “final” for the purpose of 28 U.S.C. § 158(d) “ ‘when the claim has been accepted and valued, even though the court has not yet established how much of the claim can be paid given other, unresolved claims.’ ”
 
 Jartran,
 
 886 F.2d at 862 (quoting
 
 In re Morse Elec. Co.,
 
 805 F.2d 262 (7th Cir.1986)). In
 
 Jartran,
 
 we held not final an order denying a creditor’s request for administrative priority and
 
 for
 
 dismissal of a second Chapter 11 petition only because “ ‘a considerable number of potential disputes between Jartran and [the creditor] remain[ed] unresolved’ and ‘[resolution of the claims [would have been] more than a mere “ministerial” matter.’ ”
 
 In re Unroe,
 
 937 F.2d 346, 348 (7th Cir.1991) (quoting
 
 Jartran,
 
 886 F.2d at 862). But this case is easily distinguished from
 
 Jartran,
 
 for WFE II’s plan of liquidation has already been confirmed. Because neither the IRS’ claim nor its amount are in dispute, a decision upon the priority of the IRS’ claim for trust fund taxes would leave nothing further to be resolved. All that would remain is the purely ministerial task of distribution of the estate’s assets in accordance with the terms of the plan.
 

 B.
 
 Priority of IRS’ Tax Claim in Second Chapter 11 Petition
 

 To resolve the central question at issue here, we cautiously venture into hitherto uncharted terrain. For, as we observed in
 
 Jartran,
 
 Congress never anticipated the possibility of serial Chapter 11 filings: “[T]he [Bankruptcy] Code, legislative history and commentators to date simply do not consider the possibility of a situation in which a completely new liquidating Chapter 11 case could be used to deal with problems that arise in the course of consummation of a prior Chapter 11 plan.”
 
 Jartran,
 
 886 F.2d at 869 n. 12. Instead, conversion to Chapter 7 or liquidation within the existing Chapter 11 case comprised the entire universe of options that were ordinarily contemplated when a Chapter 11 reorganization failed.
 
 See id.
 
 at 866. Because Congress did not contemplate serial Chapter 11 filings, it never directly addressed the question we confront here — whether the priority given a claim for trust fund taxes survives a serial Chapter 11 petition. Serial Chapter 11 filings pose novel and unprecedented problems. We must, therefore, construe the relevant statutes with care, striving to further rather than frustrate the underlying congressional objectives.
 

 The priority and discharge provisions of the Bankruptcy Code interact in the following manner. 11 U.S.C. § 507 enumerates the priorities that are attached to various types of debts. It accords seventh priority to trust fund taxes, taxes “required to be collected or withheld and for which the debtor is liable in whatever capacity.”
 
 [3]
 
 
 *756
 
 Unlike other sorts of tax claims, which are given priority under § 507(a)(7) for only a limited time, trust fund tax claims are, moreover, granted priority under § 507(a)(7)(C) regardless of their age.
 
 See Rosenow v. State of Illinois Dept. of Revenue,
 
 715 F.2d 277, 279 (7th Cir.1983) (trust fund taxes must be “given priority without any limitation upon the time when they became due”). 11 U.S.C. § 1141 elaborates upon the effect of confirmation of a reorganization plan. It specifies that, except as provided in the plan itself or by statute, confirmation of a plan of reorganization frees the debtor of all debts but those provided for in the plan.
 
 [4]
 
 11 U.S.C. § 523, however, sets forth one exception to this general rule: it provides that confirmation of a reorganization plan does not discharge individual debtors from certain debts for which corporations and partnerships are discharged under section 1141.
 
 [5]
 

 Emphasizing section 523’s exception to the discharge of
 
 individual
 
 debtors, the Committee urges us to conclude that a plan of reorganization discharges
 
 corporate
 
 debtors from all debts that arose prior to confirmation. The Committee maintains that, under section 1141, a confirmed plan of reorganization replaces all pre-existing debts and their priorities with whatever contractual obligations are embodied in the plan.
 

 Yet such a drastic impairment of the scheme of priorities established in section 507 is not compelled by either the plain language of these statutes or the legislative history. For, as the IRS points out, section 523 may also be construed as prohibiting discharge of individual debtors only for
 
 hidden liabilities
 
 — debts not included in the plan of reorganization because no proof of claim was ever filed. This interpretation maintains the delicate balance between priority and discharge that is erected by all three statutes. It is also entirely consistent with the legislative history.
 

 In enacting the Bankruptcy Code, Congress acknowledged the existence of a “three-way tension” among the general creditors’ interest in recouping their investment, the debtor's interest in a fresh start unburdened by massive past taxes and the tax collector’s interest in raising revenue.
 
 See
 
 S.Rep. No. 95-989, 95th Cong., 2d Sess. 14 (1978),
 
 reprinted in
 
 U.S.Code Cong. & Admin.News 5787, 5800. The Bankruptcy Code strikes a balance, accommodating these competing interests by guaranteeing priority to certain tax claims properly included in the plan of reorganization while simultaneously setting limits upon how far back in time the IRS can reach and how quickly it must act before a tax obligation loses its priority or is discharged. The legislative history also indicates that Congress sought to encourage successful reorganization by allowing debtors to present their creditors with a fixed list of liabilities:
 

 It is necessary for a corporation or partnership undergoing reorganization to be able to present its creditors with a fixed list of liabilities upon which the creditors or third parties can make intelligible decisions. Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding reorganization that is unacceptable.
 

 124 Cong.Rec. H11089 (daily ed. Sept. 28, 1978) (statement of Congressman Donald Edwards),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 6436, 6478. Section
 
 *757
 
 1141 fulfills this function by discharging a corporation’s hidden liabilities and thereby ensuring that creditors may rely upon the plan of reorganization as representing a fixed list of liabilities.
 

 The Committee contends, however, that only its interpretation of this network of statutes avoids the “undesirable uncertainty” that would hamper reorganization and dissuade creditors from taking the risk of dealing with a reorganized debtor. But hidden liabilities not included in the confirmed plan of reorganization are exactly the sort of claims that, if not discharged by a confirmed plan of reorganization, would promote uncertainty. Preserving intact the section 507 priorities of all tax debts that are specifically included in a confirmed plan of reorganization does not, on the other hand, create “undesirable uncertainty.”
 

 Turning finally to our decision in
 
 Jar-tran,
 
 the Committee asserts that WFE II, the second Chapter 11 proceeding, is a new and distinct undertaking with new and distinct obligations. The Committee maintains that, under
 
 Jartran,
 
 the provisions of a confirmed plan discharge the debtor’s underlying obligations and create a wholly new contract to fulfill the plan. By this reasoning, all debts incorporated in the reorganization plan lose their old priority status and are instead transformed into mere contractual obligations. But the Committee relies upon the broad language of the bankruptcy court’s decision in
 
 Jartran
 
 to the exclusion of its narrow holding. Although the bankruptcy court expansively stated that “[t]he provisions of a confirmed plan bind all parties whose rights are affected by the plan.... When, as here, substantial operations under a confirmed plan are followed by a second case, the entity’s unpaid liabilities under the first case plan become general unsecured claims in the second case,”
 
 In re Jartran, Inc.,
 
 76 B.R. 123, 125 (N.D.Ill.1987), it held only that administrative claims arising from expenses incurred solely to preserve the first estate were not entitled to administrative priority in a second bankruptcy proceeding. As the Committee concedes, administrative claims are intimately tied to a single bankruptcy estate in a manner that is completely different from the trust fund tax claims at issue here. Absent a clear signal from Congress, therefore, we are reluctant to adopt the Committee’s broad reading of
 
 Jartran
 
 and extend its holding so far beyond its unique facts.
 

 Contrary to the suggestions of the Committee, moreover, nothing in our opinion holds that all claims included in a confirmed plan of reorganization will retain their priorities forever. For claims accorded limited priority under section 507 may still lose their priority once they have become “stale.” Pre-bankruptcy income taxes, for example, are allotted seventh priority only if the return to which they relate was due within three years before the petition for relief is filed. If three years have elapsed by the time the second Chapter 11 proceeding is filed, such a claim would lose its section 507 priority. Our reading of the statute neither extends nor extinguishes the priority accorded claims under section 507. We merely strive to interpret these statutes so as to ensure that the delicate balance of the priority and discharge scheme established by the Code is not skewed by the unanticipated development of serial Chapter 11 filings.
 

 III.
 

 By holding that nothing in the Bankruptcy Code precludes serial Chapter 11 filings, we embarked upon this uncharted course. The bankruptcy court interpreted statutory provisions enacted without the possibility of serial Chapter 11 filings in mind in a manner true to underlying bankruptcy policies. Because the district court’s decision that trust fund tax claims are stripped of their priority in a serial Chapter 11 proceeding disregards the careful accommodation of interests embodied in the Bankruptcy Code and is compelled by neither the statutory language nor the legislative history, we REVERSE and REMAND for further proceedings consistent with this opinion.
 

 [1]
 

 . The first amended plan of reorganization guaranteed that "[a]ll claims of government units entitled to priority under [§ 507(a)(7)] shall receive deferred cash payments over a six-year period in equal annual installments commencing 90 days after confirmation of the Plan in accordance with the provisions of § 1129(a)(9)(C) of the Bankruptcy Code.”
 

 [2]
 

 . In this circuit, appeal from an interlocutory district court decision is also available by certification of the district court under 28 U.S.C. § 1292(b).
 
 See In re Moens,
 
 800 F.2d 173, 177 (7th Cir.1986). The circuits have, however, expressed general disagreement over this issue,
 
 see Capitol Credit Plan of Tenn., Inc. v. Shaffer,
 
 912 F.2d 749, 752-54 (4th Cir.1990), and at least one circuit has recently held section 1292(b) review unavailable in the bankruptcy context,
 
 Germain v. Connecticut Nat'l Bank,
 
 926 F.2d 191 (2d Cir.1991).
 

 [3]
 

 . Section 507 provides in relevant part:
 

 Section 507. Priorities.
 

 (a) The following expenses and claims have priority in the following order:
 

 [[Image here]]
 

 (7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—
 

 [[Image here]]
 

 (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity....
 

 [4]
 

 . Sections 1141(d)(1) and (2) provide in relevant part:
 

 (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
 

 (A) discharges the debtor from any debt that arose before the date of such confirmation. ...
 

 (d)(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.
 

 [5]
 

 . Section 523 provides in pertinent part as follows:
 

 Section 523. Exceptions to discharge.
 

 (a) A discharge under ... section 1141 ... of this title does not discharge an individual debtor from any debt—
 

 (1) for a tax ...
 

 (A) of the kind and for the period specified in ... section 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed....