# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01780-SCT

*MOBILITY MEDICAL, INC., AND MOBILITY MEDICAL OF NORTH MISSISSIPPI, LLC*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2011 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BRANDON C. DIXON |
| | HARRIS H. BARNES, III |
| ATTORNEYS FOR APPELLEE: | JAMES L. POWELL |
| | KENITTA FRANKLIN TOOLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/06/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Mississippi law requires Mobility Medical, Inc., and Mobility Medical of North Mississippi, LLC, (together referred to herein as "Mobility") to pay a tax on their gross medical equipment sales proceeds, including sales to customers who are covered by the Federal Employees Health Benefits Plan (FEHBP). Federal law prohibits states from levying direct or indirect taxes on insurance carriers who participate in the FEHBP.  The question before us today is whether this federal law prohibits the State of Mississippi from requiring Mobility to pay sales taxes on equipment it sells to individuals who are covered by the FEHBP.  We hold that the tax on Mobility's gross sales, is not a tax on FEHBP or any other

health-benefits insurance plan.  Accordingly, the federal law that prohibits the State from taxing FEHBP or its participating insurance carriers does not preempt the Mississippi law that requires Mobility to pay the tax on its gross sales, including those to individuals covered by FEHBP.

**FACTS AND PROCEDURAL HISTORY**

¶2. Mobility is a retail seller of medical equipment. In 2008, the Mississippi Department of Revenue reclassified certain sales of medical equipment paid for by third-party payors on behalf of government agencies as taxable transactions, subjecting Mobility to the 7% state sales tax on the gross proceeds of these retail sales from June 2004 through June 2007.

¶3. The third-party payors are participants in the FEHBP, which provides federal employees, retirees, and their families subsidized healthcare benefits. Under the FEHBP, the United States Office of Personnel Management contracts with insurance carriers – the third-party payors – to create healthcare plans for enrollees.

¶4. The Federal Employees Health Benefits Act (FEHBA)[1] – the federal statute creating the FEHBP – requires enrollees and the federal government to make matching contributions which are deposited into the Employees Health Benefits Fund (the fund). The fund is used to reimburse insurance carriers which initially pay enrollees' claims. The FEHBA prohibits states from assessing taxes "directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan . . . with respect to any payment made from the Fund."[2]

---

[1] 5 U.S.C. §§ 8901-8913 (2006).

[2] 5 U.S.C. § 8909(f)(1) (2006).

¶5. Mobility challenged the tax, claiming the statute that created it was preempted by federal law. The Mississippi State Tax Commission affirmed the assessments. Mobility paid the assessments under protest and sued for a refund in Hinds County Chancery Court. The chancery court affirmed the Commission and granted summary judgment in favor of the Department of Revenue because it excluded sales paid for by Medicare and Medicaid from the sales tax, and, thus, Mobility's argument that the tax was preempted by federal law was moot.

¶6. Mobility appealed to this Court, arguing that the chancellor erred by failing to address whether the FEHBA preempts the state sales tax.

## ANALYSIS

¶7. The sole question presented is whether the federal statute prohibiting any direct or indirect state tax "on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan"[3] preempts the tax on Mobility's sales proceeds. Because the tax does not directly or indirectly tax "a carrier or an underwriting or plan administration subcontractor. . .with respect to any payment made from the Fund,"[4] the FEHBA does not preempt the tax. Accordingly, we affirm the chancery court's grant of summary judgment in favor of the Department of Revenue.

¶8. Mobility recognizes that the tax is not assessed to its customers' insurance carriers, but argues that the FEHBA precludes any state tax which *may cause* an increase in costs for the fund. Mobility suggests that if the state charges a sales tax on its proceeds and it charges

---

[3]5 U.S.C. § 8909(f)(1) (2006).

[4]5 U.S.C. § 8909(f)(1) (2006).

3

the tax on its sales of medical equipment, insurance carriers will pass the cost of the tax to the fund. But nothing in the law *requires* Mobility to pass any costs to its customers, or to the fund, so there is no conflict between state and federal law, and the tax is not preempted.

¶9.    The FEHBA states in its relevant part:

> No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan by any State, the District of Columbia, or the Commonwealth of Puerto Rico, or by any political subdivision or other governmental authority thereof, with respect to any payment made from the Fund.[5]

¶10.    Federal preemption of state law occurs where Congress explicitly preempts state law, Congress has occupied the entire field, or there is an actual conflict between federal and state law.[6] Here, Congress has not explicitly preempted any tax on retailers, nor has it occupied the entire field of taxation. Thus, the law creating the tax would be preempted only if it actually conflicts with the FEHBA.

¶11.    We find that there is no conflict between the FEHBA and the law that requires Mobility to pay a tax on their sales. Because Mobility is a retailer of medical equipment – not "a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan"[7] – the state does not directly impose the tax on one of the prohibited entities. And because the state does not require that the tax be charged to its customers or their insurance carriers, or that it be reimbursed by the fund, the state does not indirectly tax a

---

[5]5 U.S.C. § 8909(f)(1) (2006).

[6]***Sanders v. Advanced Neuromodulation Sys., Inc.***, 44 So. 3d 960, 965 (Miss. 2010) (citing ***Harmon v. Regions Bank***, 961 So. 2d 693, 697-98 (Miss. 2007)).

[7]5 U.S.C. § 8909(f)(1) (2006).

4

prohibited entity with respect to a payment from the fund. Therefore, state and federal law do not conflict and the FEHBA does not preempt the tax.

¶12. The State of Mississippi charges Mobility – not its customers – the tax. Mobility does not contest this point, but argues instead that it must – and the dissent fears it might – pass along the cost of its taxes to its customers, creating a trickle-down effect. Both Mobility and the dissent call this an indirect tax.

¶13. It is surprising to see the dissent conclude that the federal government has the power to prevent the State of Mississippi from levying a fee or tax on a Mississippi business, simply because that business *might* pass the tax or fee along to its customer who *might* seek reimbursement for the tax from an insurance company whose policy *might* cover it.

¶14. The dissent correctly observes that, as a matter of practice, most purveyors of cheeseburgers tack the sales tax onto the price of the cheeseburger. But the dissent is not correct in its understanding that tacking the sales tax onto the price is required, nor is the dissent correct in its understanding that the consumer must pay a tacked-on sales tax that cheeseburger vendors "are required to remit to the state." Cheeseburger vendors are perfectly free under Mississippi law to set the price of a cheeseburger at $4.00, and then require their customers to pay exactly $4.00. It is the vendor – not the customer – who is required by Mississippi law to pay the sales tax.

¶15. Using the dissent's logic, Mobility could argue it is exempt from paying inventory tax, unemployment tax, property taxes, sales tax it pays on its own equipment, franchise tax, license fees, and numerous other taxes and fees it must pay under state law, since it must take

those taxes and fees into consideration when setting its prices, and must "indirectly" pass them along to their customers.

¶16.   We decline to hold that federal law prevents the State of Mississippi from requiring Mobility to pay a tax on the gross amount of its sales, simply because part of that tax *might* be passed along to its customers who are covered by the FEHBA.

¶17.   It is also worth noting that – at least for now, and with some exceptions under the new federal healthcare law – insurance carriers are free to insure whatever they like.  Mobility provides us with no authority that requires insurance companies to cover the sales tax added to the purchase price of equipment. And even if Mobility charges a customer the tax, and the customer's insurance policy does cover sales tax – such that it reimburses Mobility's customer for the sales tax – Mobility provides us with no authority that requires, or even allows, the insurance carrier to pass the sales tax cost to the fund.

¶18.   Other courts have come to a similar conclusion when addressing similar pass-through cost arguments. The United States Court of Appeals for the Fourth Circuit rejected the argument that a tax on healthcare providers can constitute an indirect tax on carriers based on a pass-through principle.[8] Likewise, the United States District Court for the District of Connecticut upheld a sales tax on hospital earnings because there was no evidence that the tax increased insurance reimbursement from the FEHBA fund.[9]

## CONCLUSION

---

[8] *United States v. West Virginia*, 339 F.3d 212, 218 (4th Cir. 2003).

[9] *Connecticut v. United States*, 1 F. Supp. 2d 147, 153 (D. Conn. 1998).

¶19.   FEHBA prohibits state taxation of transactions "with respect to any payment made from the Fund."[10] There is simply no factual basis on which to assume that Mississippi's tax on Mobility's gross proceeds will require a payment of that tax from the FEHBA fund. Therefore, state and federal law do not actually conflict, and the state sales tax is not preempted. The chancery court's grant of summary judgment in favor of the Mississippi Department of Revenue is affirmed.

¶20.   **AFFIRMED.**

**RANDOLPH, P.J., LAMAR, CHANDLER AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., PIERCE AND KING, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶21.   The majority holds that, because Mobility is not an insurance carrier, the sales tax imposed upon its proceeds is not preempted by the Federal Employees Health Benefits Act (FEHBA). And, since nothing in the FEHBA specifically requires Mobility to pass costs to the fund, then there is no conflict between the federal law and the state sales tax. In my view, however, it is clear that some of the cost created by Mississippi's sales tax on medical equipment sold by Mobility inevitably will reach the fund. This is an eventuality that the FEHBA was created to prevent. Therefore, I respectfully dissent.

¶22.   The FEHBA provides that "[n]o tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor . . . with respect to any payment made from the Fund." 5 U.S.C. § 8909(f)(1) (2006). The Office of Personnel Management (OPM), which manages the fund, has determined that this

---

[10]5 U.S.C. § 8909(f)(1) (2006).

language should be interpreted broadly. 48 C.F.R. § 1631.205-41 (2011). The prohibition applies to any tax, fee, or monetary payment directly or indirectly imposed on FEHBP premiums. *Id*. The regulation provides that payments prohibited under the section include "all payments directed by States or municipalities, regardless of how they may be titled, to whom they must be paid, or the purpose for which they are collected . . . ." *Id*. This language makes it abundantly clear that, although Mobility is not an insurance carrier, an underwriter, or a plan administration subcontractor, the sales tax in question creates an expenditure that will indirectly increase the costs of insurance carriers purchasing equipment from Mobility, and ultimately will increase the amount of reimbursement from the fund. This is in direct conflict with the purposes and provisions of the FEHBA.

¶23.    The majority goes further and argues that the tax is imposed on Mobility and not on its customers. Therefore, the majority reasons, Mobility simply can pay the sales tax out of its own pocket. Or, the insurance carrier can pay the sales tax and not ask for reimbursement from the fund. Or, the insured can pay the sales tax. I disagree for several reasons. First, forcing Mobility to remit the sales tax itself would discourage Mobility from selling medical equipment to insureds covered under the FEHBA. It would cost Mobility more money to sell to federal employees than to other customers. This runs counter to the clear intent of the FEHBA, which is to provide economical health care solutions to federal employees. Further, insurance companies will have no incentive to pay a sales tax for which they know they will not be reimbursed. It is likely that the insured will have to foot the bill.

¶24.    Additionally, the majority says that Mobility is arguing "that the FEHBA precludes any state tax which *may cause* an increase in costs for the fund." Maj. Op. ¶8. However, the

8

assessments at issue already have been paid under protest by Mobility. The chancery court did not address whether any of the assessments ultimately were reimbursed from the fund. It is entirely possible that the sales tax on the sale of certain medical equipment has been reimbursed from the fund. But we do not know, because the chancery court did not make that determination. I would remand to the chancery court for a determination of whether any of the challenged assessments have been reimbursed from the fund.

¶25. It is true, as the majority notes, that Mobility, the insurance carrier, or the insured can pay the sales tax without seeking reimbursement from the fund. However, in the narrow range of cases in which sales tax on durable medical equipment is paid for by insurance carriers and *actually is reimbursed by the fund*, I believe the plain language of Section 8909(f) of the FEHBA and the OPM's interpretation of the FEHBA clearly provide that collection of the state sales tax has been preempted by federal law. The majority professes that I conclude that preemption is appropriate where the tax *might* be passed along to the fund. With respect, I conclude no such thing. What I do conclude is that, where the cost of the sales tax on durable medical equipment sold to insureds under the FEHBA *actually is borne by the fund*, then the sales tax is preempted by the supreme law of the land: federal law. If a particular transaction is one in which the sales tax affects the fund, then Mississippi's sales tax is preempted. It should be simple enough to determine whether the sales tax in question ultimately will be borne by the fund when a sale is made. If the sales tax does not affect the fund, then Mississippi may collect it with impunity.

¶26. The majority's analogy that, under this logic, various other state taxes on Mobility are the same kind of indirect taxes as the sales tax in question is simply incorrect. Sales taxes,

by definition, always are indirect taxes on the consumer. When a Mississippian purchases a cheeseburger, he or she pays more than the listed price because the consumer must pay the sales tax that the cheeseburger vendor is required to remit to the state. Similarly, when an insurer purchases medical equipment from Mobility, it pays more than the price of the equipment because it is covering Mobility's sales tax. This is an indirect tax on the insurance carrier, since the carrier, in effect, is charged for the sales tax that Mobility is required to remit to the state for that sale. The other kinds of taxes mentioned by the majority are in nowise similarly indirect upon the insurance company purchasing the medical equipment. If the additional sales tax payment ultimately is borne by the fund, then it is obvious that the sales tax in that transaction is preempted by federal law. Any such tax that Mobility was assessed which ultimately was borne by the fund should be refunded. This case should be remanded to the chancery court to make that determination. Accordingly, I respectfully dissent.

**WALLER, C.J., PIERCE AND KING, JJ., JOIN THIS OPINION**.