**IN RE: Mickey Dale FUGITT and Rhonda Lou Fugitt, Debtors.**

**Mickey Dale Fugitt and Rhonda Lou Fugitt, Plaintiffs**

v.

**Mississippi Department of Revenue, Defendant**

**CASE NO. 13–03094–NPO**
**ADV. PROC. NO. 13–00098–NPO**

United States Bankruptcy Court, S.D. Mississippi.

Signed October 27, 2014

James G. McGee, Jr., Matthew Elder Rutherford, Law Office of James G. McGee, Jr., PLLC, Jackson, MS, for Plaintiffs.

Kenitta Franklin Toole, Miss. Department of Revenue, Raymond, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Judge Neil P. Olack, United States Bankruptcy Judge

There came on for consideration the Motion for Summary Judgment (the "Sum-

mary Judgment Motion") (Adv. Dkt. 49) [1] filed by the Mississippi Department of Revenue (the "MDOR"); the Brief in Support of Motion for Summary Judgment (the "Summary Judgment Brief") (Adv. Dkt. 28) filed by the MDOR, the Memorandum in Opposition to Defendant's Motion for Summary Judgment (the "Debtors' Brief") (Adv. Dkt. 53) filed by the debtors, Mickey Dale Fugitt ("Mickey Fugitt") and Rhonda Lou Fugitt ("Rhonda Fugitt"), and the Reply to Response to Motion for Summary Judgment (the "Reply Brief") (Adv. Dkt. 54) filed by the MDOR. Together, Mickey Fugitt and Rhonda Fugitt are referred to as the "Debtors."

In support of its Summary Judgment Motion, the MDOR presented twelve (12) exhibits marked as Exhibits "A" through "L." (Adv. Dkts. 29–34). [2] MDOR's exhibits are referred to in this Opinion as "(MDOR's Ex. ——)". The Debtors offered two (2) exhibits in opposition to the Summary Judgment Motion, marked as Exhibits "A" and "B." (Dkt. 53–1 & 53–2). The Debtors' exhibits are referred to in this Opinion as "(Debtors' Ex. ——)".

The Summary Judgment Motion is the second dispositive motion filed by the MDOR in the Adversary. On March 3, 2014, the MDOR filed the Defendant Mississippi Department of Revenue's Amended Motion to Dismiss (the "Motion to Dismiss") (Adv. Dkt. 21), alleging that the Court lacked subject matter jurisdiction under 11 U.S.C. § 505 or, in the alternative, that the Court should abstain from

hearing the parties' tax dispute. Before the hearing on the Motion to Dismiss, the MDOR filed the Summary Judgment Brief arguing that the MDOR was entitled to a judgment on the merits, but the MDOR failed to file a separate motion for summary judgment as required by Miss. Bankr.L.R. 7056–1. The Debtors filed the Motion to Strike (Adv. Dkt. 38) the Summary Judgment Brief because of the MDOR's alleged "spurious misuse of the system." To correct the oversight, the MDOR filed the Motion for Leave to Amend Motion for Summary Judgment or in the Alternative Waive Requirement of Local Rule (Adv. Dkt. 42). The Court considered the Motion to Dismiss at a hearing on June 11, 2014. Shortly thereafter, the Court issued the Memorandum Opinion and Order (1) Denying Defendant Mississippi Department of Revenue's Amended Motion to Dismiss; (2) Denying Motion to Strike; and (3) Granting the Mississippi Department of Revenue's Motion for Leave to Amend Motion for Summary Judgment or in the Alternative Waive Requirement of Local Rule (the "First Opinion") (Adv. Dkt. 47). Consistent with the First Opinion, the MDOR filed the Summary Judgment Motion for the Court's consideration in conjunction with the previously filed Summary Judgment Brief on August 14, 2014. The Debtors responded by filing the Debtors' Brief on August 22, 2014. The Debtors did not file a separate written response to the Summary Judgment Motion as required by MISS. BANKR. L.R. 7056–1. On September 2, 2014, the MDOR filed the Reply

---

1. Citations to the record are as follows: (1) citations to docket entries in the above referenced adversary proceeding (the "Adversary") are cited as "(Adv.Dkt. ——)"; (2) citations to docket entries in the above styled bankruptcy case (the "2013 Bankruptcy Case") are cited as "(Bankr.Dkt. ——)"; and (3) citations to docket entries in other cases are cited by the case number followed by the docket number.

2. More specifically, MDOR's Exhibits "A" through "L" may be found at the following docket entries: 29–2; 29–3; 29–4; 30; 30–1; 30–2; 31; 32; 33; and 34. Docket numbers 29–3, 29–4, and 30 each consist of two (2) exhibits, and docket numbers 31 and 32 together consist of one (1) exhibit.

Brief in further support of its Summary Judgment Motion.

## Jurisdiction

The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Moreover, 11 U.S.C. § 505(a) confers jurisdiction on this Court to determine the tax disputes in the Adversary. Notice of the Summary Judgment Motion was proper under the circumstances.

## Facts [3]

Many of the following facts are taken from the Court's First Opinion and are undisputed unless otherwise noted.

1. The MDOR is an agency of the State of Mississippi created by MISS.CODE ANN. § 27–3–1(1). MDOR's predecessor, the Mississippi State Tax Commission, notified Rhonda Fugitt in a letter dated April 2, 2007 that Scooters Trademart had been selected for an audit of sales taxes for the period from March 1, 2004 through the date of the letter. (MDOR's Ex. A). Rhonda Fugitt is the sole proprietor of Scooters Trademart, a convenience store in Walnut Grove, Mississippi. Of particular importance, Scooters Trademart offers check cashing services, at no additional fee, to customers who purchase items from the store. Rhonda Fugitt procures cash on hand for the store's check cashing services through weekly loans from her bank. She then draws checks on her bank account,[4] payable to cash, and redeposits any unused loan proceeds. In the same general account, she deposits sales proceeds.

2. The taxation of sales in Mississippi is governed by the Mississippi Sales Tax Law, MISS. CODE ANN. §§ 27–65–1 to 27–65–111. During the period covered by the audit, the Mississippi Sales Tax Law, with certain exceptions, assessed on "every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever ... a tax equal to seven percent (7%) of the gross proceeds of the retail sales of the business." MISS. CODE ANN. § 27–65–17(1)(a).

## Sales Tax Assessment

3. As a result of its audit of Scooter's Trademart, the MDOR determined that Rhonda Fugitt failed to report certain taxable sales for the period March 1, 2004 through April 30, 2007 (the "Audit Period"). (MDOR's Ex. B; Debtors' Ex. A). On October 10, 2007, the MDOR issued the Assessment of Sales Taxes (the "Assessment")[5] (MDOR's Ex. B; Debtors' Ex. A), demanding payment of $43,888.00, consisting of delinquent sales taxes of $30,328.00 and interest and/or damages of $13,560.00 for the Audit Period.[6]

4. The auditor calculated the amount of sales taxes owed using the cash flow method[7] based on the following records provided by the Debtors: (1) bank statements; (2) 2004–2005 income tax returns; (3) purchase invoices; (4) cancelled checks; (5)

---

**3.** The following findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**4.** Rhonda Fugitt uses both a business account and her personal account to conduct her business. Because it makes no difference to the outcome, the Court in this Opinion does not distinguish between these accounts.

**5.** The term "Assessment" is used broadly in this Opinion to include later adjustments to the amount of unpaid sales taxes.

**6.** $43,888.00 = $30,328.00 + $13,560.00. (MDOR's Ex. B; Debtors' Ex. A).

**7.** The cash flow method examines the movement of cash through a business. BLACK'S LAW DICTIONARY 260 (10th ed.2014).

deposit slips; (6) Z tape records;[8] and (7) loan documents. (MDOR's Exs. J–K). Because the Debtors did not provide any records for check cashing and because the customers who used the check cashing services were required to make a purchase, the auditor estimated the taxable sales by subtracting from the cash flow "the total checks [made payable] to cash less 5% (for business sales)." (MDOR's Ex. J, Dkt. 31 at 3).

5. The MDOR mailed a notice of the Assessment (MDOR's Ex. B; Debtors' Ex. A) and demand for payment to Rhonda Fugitt by certified mail, return receipt requested. (MDOR's Exs. B–C; Debtors' Ex. A). The return receipt shows that it was signed on October 13, 2007 by "Jessica Fugitt," not Rhonda Fugitt. (MDOR's Ex. C). In the Debtors' Brief, Rhonda Fugitt alleges that she has no recollection of having received notice of the Assessment. (Debtors' Br. at 1–2).

6. On January 30, 2008, the MDOR issued a transfer of the Assessment (the "Transfer Assessment") (MDOR's Ex. D; Debtors' Ex. B) against Rhonda Fugitt's spouse, Mickey Fugitt,[9] in the amount of $44,798.00, including interest accruing through January 30, 2008 (the date of the Transfer Assessment). The MDOR mailed a notice of the Transfer Assessment (MDOR's Ex. D; Debtors' Ex. B) and demand for payment to Mickey Fugitt by certified mail, return receipt requested. (MDOR's Exs. D–E; Debtors' Ex. B).

The return receipt shows that on February 6, 2008 it was signed by "Mickey Fugitt." (MDOR's Ex. E; Debtors' Ex. B). In the Debtors' Brief, Mickey Fugitt contends that he has no recollection of ever having received notice of the Transfer Assessment, although he does not dispute that his signature appears on the return receipt.

7. In 2009, the Debtors retained a certified public accountant, Eddie Beck ("Beck"),[10] to represent them in their sales tax dispute with the MDOR. After Beck provided copies of checks made payable to two (2) vendors during the Audit Period, the MDOR on April 3, 2009 reduced the tax delinquency from $43,888.00 to $34,108.00 (MDOR's Ex. K).

**2012 & 2013 Bankruptcy Cases**

8. On August 22, 2012, the Debtors filed a chapter 13 petition for relief in Case No. 12–02731–NPO (the "2012 Bankruptcy Case") (Case No. 12–02731–NPO, Dkt. 1). The MDOR filed a proof of claim (Case No. 12–02731–NPO, POC No. 4–1) for delinquent sales taxes for the Audit Period.[11] The 2012 Bankruptcy Case was dismissed for nonpayment on December 10, 2012 and closed on April 9, 2013. (Case No. 12–02731–NPO, Dkts. 33 & 40).

9. The Debtors initiated the 2013 Bankruptcy Case by filing a chapter 7 petition for relief (the "Petition") (Bankr. Dkt.1) on October 11, 2013.

---

**8.** A Z tape record is a company's copy of a receipt given to a customer, except that a Z tape record lists all sales made during a specific time period.

**9.** The Mississippi Sales Tax Law defines "person" to include a spouse "where joint benefits are derived from the operation of a business taxed hereunder." MISS.CODE ANN. § 27–65–3(c).

**10.** Beck passed away in June, 2010, and, therefore, did not complete his representation of the Debtors in their sales tax dispute.

**11.** The proof of claim filed by the MDOR on October 25, 2012 (Case No. 12–02731–NPO, POC No. 4–1) seeks an allowed claim of $50,189.43. For unknown reasons, the principal amount is higher than the principal amount shown in the Assessment. (MDOR's Ex. K).

**Adversary**

10. On November 7, 2013, the Debtors filed the Complaint of Mickey Dale Fugitt and Rhonda Lou Fugitt Initiating Adversary Proceeding (the "Complaint") (Adv. Dkt. 1) against the MDOR. In the Complaint, the Debtors ask the Court to determine (1) the validity and amount of sales taxes they owe the State of Mississippi and (2) the dischargeability of that amount in the 2013 Bankruptcy Case. The Debtors allege that the MDOR's Assessment was erroneously based upon money and sales not subject to taxation. They assert, *inter alia*, that the MDOR improperly included in its Assessment deposits of loan proceeds from its check cashing services. The auditor, according to the Debtors, used an accounting method that artificially inflated their sales tax liability.

11. The MDOR filed the Amended Answer to Complaint (the "Answer") (Adv. Dkt. 19) on February 27, 2014. In its Answer, the MDOR points out that the Assessment is presumed correct under Mississippi law and maintains that the auditor properly calculated the Assessment based on the bank statements and other records provided by the Debtors. Moreover, the MDOR asserts that the Debtors' tax liability is nondischargeable under 11 U.S.C. § 523(a)(1).

12. In the Summary Judgment Motion, the MDOR contends that the material facts are undisputed, and the MDOR is entitled to a judgment dismissing the Complaint with prejudice. The Debtors ask the Court to deny the Summary Judgment Motion.

### Discussion

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary Judgment is not disfavored, but rather is looked upon as an important process through which parties can obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations and quotation omitted). Summary judgment is properly entered when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c)(1)(A); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

The initial burden of proof is on the movant to specify the basis upon which summary judgment should be granted and identify portions of the record that demonstrate the absence of a genuine issue of material fact. FED.R.CIV.P. 56(c)(1); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The movant is entitled to the benefit of any relevant presumption under state law to satisfy the initial burden of proof. Once the initial burden is met, the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[C]onclusory allegations" or "unsubstantiated assertions" do not meet the nonmovant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d

395, 399 (5th Cir.2008). Summary judgment should be granted where the non-movant "has failed to make a sufficient showing on an essential element of [the] case with respect to which [the party] has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

In the absence of any proof, the Court will not assume that the nonmovant could or would prove the necessary facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the [bankruptcy] court." *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003).

### B. Validity of Sales Tax Assessment

Under MISS. CODE ANN. § 27–65–37, an assessment is deemed *prima facie* correct if the auditor made it "from any information available." The statute, in pertinent part, provides:

> If adequate records of the gross income or gross proceeds of sales are not maintained or invoices preserved as provided herein, or if an audit of the records of a taxpayer, or any return filed by him, or any other information discloses that taxes are due and unpaid, the commissioner shall make assessments of taxes, damages, and interest from any information available, which shall be prima facie correct.

MISS.CODE ANN. § 27–65–37. The U.S. Bankruptcy Code does not alter the allocation of proof that applies under Mississippi law. *See Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Woodall v. Comm'r,* 964 F.2d 361, 363 (5th Cir.1992) (holding that the burden of proof does not shift to the government when an objection to a tax claim is litigated in bankruptcy court).

Because the MDOR has presented the Court with numerous documents supporting its Assessment of $34,108.00 (MDOR's Exs. J–K), the Court finds that the MDOR has established a *prima facie* case of the accuracy of the Assessment. The Court further finds that the Debtors bear the burden of producing sufficient evidence to create a genuine dispute as to the accuracy of the Assessment.

■ The Debtors contend that no presumption of correctness arises and the burden of proof does not shift under MISS. CODE ANN. § 27–65–37 because they do not remember receiving notice of the Assessment and because the attempted deliveries of the notice to Rhonda Fugitt by certified mail were defective.[12] (Debtors' Br. at 1–2). The Debtors allege that the absence of Rhonda Fugitt's signature on the return receipts for the certified mail addressed either to her or Mickey Fugitt renders notice of the Assessment inadequate as a matter of law. They maintain that MISS. CODE ANN. § 27–7–51(1) does not allow for delivery of the notice on "someone indicating authority to receive mail on the taxpayer's behalf" but requires that notice of an assessment for additional taxes be sent to the taxpayer "by certified mail or by personal delivery." (Debtors' Br. at 2). The adequacy of the notice is a material issue of fact that defeats summary judgment, according to the Debtors.

The Court finds that the MDOR met the procedural requirements for proper notice of the Assessment to Rhonda Fugitt under Mississippi law. It is undisputed that notice of the Assessment was sent to Rhonda Fugitt by certified mail. The notice of the

---

**12.** The Debtors treat the notice of the Transfer Assessment mailed to Mickey Fugitt as an attempt by the MDOR to provide Rhonda Fugitt notice of the Assessment.

Transfer Assessment that was sent to Mickey Fugitt by certified mail was not intended as a substitute for notice of the Assessment to Rhonda Fugitt, as the Debtors apparently claim in the Debtors' Brief. The MDOR provided proof of service of notice of the Assessment to Rhonda Fugitt by producing the return receipt. (MDOR's Exs. C & E; Debtors' Exs. A & C). The return receipt shows that MDOR mailed the notice to the proper address, a fact the Debtors do not dispute. (MDOR's Exs. C & E; Debtors' Exs. A & C).

The purported lack of memory of both Debtors of ever having received notice of the Assessment does not create a disputed issue of fact. The Debtors did not support their contention with any summary judgment evidence. Moreover, evidence of their lack of memory is not the same as evidence that they did not receive the notice.

The Court further finds that the Debtors' reliance in the Debtors' Brief on MISS. CODE ANN. § 27–7–51(1) is misplaced because that statute pertains to income taxes, not sales taxes. The statute that applied to sales taxes at that time, MISS.CODE ANN. § 27–65–37, allowed for delivery of a notice of the assessment by certified or registered mail and did not require personal or restricted delivery:

> The commissioner shall give notice to the taxpayer of ... assessments [of sales taxes] and demand payment of the tax, damages and interest within thirty (30) days from date of delivery of the notice. The notice shall be sent by certified or registered mail or delivered by an agent of the commissioner either to the taxpayer or someone of suitable age and discretion at the taxpayer's residence or place of business.

MISS. CODE ANN. § 27–65–37 (2007).[13] The Debtors do not dispute either that Jessica Fugitt (assumedly a relative) received the notice of the Assessment or that she was "someone of suitable age and discretion at the taxpayer's residence or place of business." *Id.*

For all of the above reasons, the Court finds that the Assessment is entitled to a presumption of correctness under the Mississippi Sales Tax Law. Accordingly, the burden of proof shifts to the Debtors to show that a genuine dispute exists as to the accuracy of the Assessment.

■ In the Debtors' Brief, the Debtors allege that the Assessment was erroneous for multiple reasons but do not support their allegations with any specific figures or calculations. (Debtors' Br. at 2). Also, they do not advocate any alternative method that the auditor could have used in determining their tax liability instead of the cash flow method. The main reason posited by the Debtors in opposition to the Assessment is their assertion that the auditor erroneously treated all cash deposits as sales proceeds subject to taxation although some of the cash deposits consisted of loan proceeds. In the Debtors' Brief, the Debtors list, but provide no other discussion of, four (4) additional reasons why the Assessment is incorrect. According to the Debtors, the Assessment was based on (1) "charges which were outside the audit period"; (2) "charges ... result[ing] from work covered by a warrantee"; (3) "charges which were financed by the customer and paid in installments"; and (4) "an estimate given by the [Debtors], to a customer, for work which was never performed." (Debtors' Br. at 2–3).

In defense of the Debtors' only substantive challenge to the accuracy of the As-

---

13. An amendment in 2010 substituted "regular mail" for "certified or registered mail" in the last sentence of the first paragraph of MISS. CODE ANN. § 27–65–37.

sessment, the MDOR presented an exhibit to the Court showing that the MDOR credited all documented loans deposited in the account, all cash withheld to pay vendors, and all checks returned to vendors. (MDOR's Ex. K, at 5). The MDOR maintains that the Debtors' response to Interrogatory No. 14 shows the absence of any evidence contradicting this exhibit:

> INTERROGATORY NO. 14 : In paragraph 22 of the Complaint, Plaintiffs state that the agency did not give any credit for cash checking [sic] what facts and calculations document this allegation?
>
> RESPONSE : Plaintiff objects in that this Interrogatory calls for identification of information that is already in the care, custody, and control of the Defendant.

(MDOR's Ex. L at 3–4).

The Court finds that the auditor properly relied on loan documents and other records provided by the Debtors to estimate taxable sales using the cash flow method, in large part, because the Debtors failed to maintain or produce records of actual taxable sales. As the MDOR points out, Rhonda Fugitt was required to keep records of gross sales of Scooters Trademart under Miss.Code Ann. § 27–65–37, but did not. As the MDOR also points out, the Debtors' answers to Interrogatory Nos. 5 and 6 establish that the Debtors indisputably failed to maintain any records that would identify the customers who presented checks for cashing, the amounts of the taxable sales, or the cash amounts given in exchange for the checks.

> INTERROGATORY NO. 5 : How was the cash checking [sic] portion of the business conducted?
>
> RESPONSE : Plaintiff borrowed money from a bank in order to conduct the check cashing portion of his [sic] business. All money and sales went through the register. Absolutely no money was charged for this check cashing service. The Plaintiff took money back to the bank each week and paid interest.
>
> INTERROGATORY NO. 6 : What method of record keeping or records, were maintained of the cash checking [sic] business?
>
> RESPONSE : The bank kept a record of all money borrowed, and z-tape records on all sales were kept.

(MDOR's Ex. L at 2). Thus, apart from loan documents and Z Tape records, the Debtors concede they did not provide the auditor with any evidence allocating the amount of unused loan proceeds and the amount of sale proceeds. If they had, according to the MDOR, the auditor could have used that information to differentiate the Debtors' taxable sales from the loan proceeds. Instead, the auditor relied on the loan documents and bank statements to determine the amount of loan proceeds and then applied a small percentage to that total to estimate the amount of taxable sales associated with the check cashing transactions. The Debtors do not argue that a specific method for estimating sales taxes different from the cash flow method would have yielded a more accurate result.

Finally, the Debtors claim the Z tape records show that the auditor's method for calculating taxable sales was erroneous. Because the Debtors did not charge their customers for check cashing services, the Z Tape record would not reflect any of the check cashing transactions. For this reason, the Court rejects the Debtors' contention that the Z tape records create a genuine dispute for trial. Accordingly, the Court finds that the Debtors have not shown that a genuine issue exists that would rebut the presumption of correctness of the Assessment.

The Debtors did not present summary judgment evidence supporting any of the other four (4) reasons [14] why the Assessment allegedly is incorrect. The Court will address only the fourth reason—that the Assessment was based on "an estimate given by the [Debtors], to a customer, for work which was never performed"—because of the arguments the MDOR made against it in the Summary Judgment Brief. This same allegation appears in paragraph 20 of the Complaint.

The MDOR contends that the Debtors' response to Interrogatory No. 13 constitutes an admission that they did not perform any nontaxable work:

> ***INTERROGATORY NO. 13*** : In paragraph 20, there is allegation of work performed that was non taxable, please describe in detail what constitutes this work.
>
> ***RESPONSE*** : Plaintiff objects in that this Interrogatory is vague and ambiguous.

(MDOR's Ex. L at 3). The MDOR apparently argues that the Debtors could find Interrogatory No. 13 "vague and ambiguous" only if they disagreed with the facts underlying the question, that is, that they had performed nontaxable work during the Audit Period. The Court, however, does not read the Debtors' response as inconsistent with the allegations in paragraph 20. The Debtors could have read Interrogatory No. 13 as a declaration that the Debtors had performed nontaxable work during the Audit Period, whereas in paragraph 20, the Debtors alleged that the "work was never performed." (Compl. ¶ 20). The difference is subtle but would explain why the Debtors responded as they did. The Court's

rejection of the MDOR's response as to the fourth reason does not create a genuine issue because the Debtors failed to provide any summary judgment evidence supporting their argument that "another item was based upon an estimate given by the [Debtors], to a customer, for work which was never performed." (Debtor Br. at 2–3).

When a taxpayer challenges an assessment under Mississippi law, a presumption arises that the assessment is correct if the result was based on "other information." *Marx v. Bounds*, 528 So.2d 822, 825–26 (Miss.1998). Once a presumption arises, the taxpayer bears the burden of proof showing that a genuine dispute exists regarding the correctness of the assessment. In the absence of any evidence from the Debtors demonstrating that the auditor's calculations were incorrect, that the auditor could have arrived at a more accurate estimate of taxable sales by using a different method, or that some other flaw existed, the Court concludes that the Debtors have failed to overcome the presumption of correctness. The auditor was correct to estimate the Assessment based on the "other information" made available to him by the Debtors. MISS.CODE ANN. § 27–65–37. The Debtors failed to segregate the loan proceeds or keep contemporaneous, adequate records showing the amounts of all taxable sales but now complain, without any specific evidence, that the MDOR overestimated the amount of taxable sales. The Court will not set aside a *prima facie* valid assessment in the absence of any genuine issue about its accuracy. Accordingly, the Court finds that

---

**14.** These four (4) reasons are that the Assessment was based on: (1) "charges which were outside the audit period"; (2) "charges ... result[ing] from work covered by a warrantee"; (3) "charges which were financed by the customer and paid in installments"; and (4) "an estimate given by the [Debtors], to a customer, for work which was never performed." (Debtors' Br. at 2–3).

there is no genuine dispute as to the validity of the Assessment.

## C. Dischargeability

The MDOR also seeks summary judgment declaring that the assessed sales taxes, for which the Debtors are personally liable, are nondischargeable in the Bankruptcy Case. Under 11 U.S.C. § 523,[15] an individual debtor is not discharged from any debt of a kind specified in § 507(a)(8). 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8), in turn, establishes the priority of certain kinds of tax claims of governmental units[16] in bankruptcy cases.[17] 11 U.S.C. § 507(a)(8). The parties dispute whether § 507(a)(8)(C) or § 507(a)(8)(E) applies to the Debtors' sales tax liability.[18] The MDOR argues that the assessed sales taxes are trust fund taxes under § 507(a)(8)(C) and, thus, are nondischargeable. The Debtors, on the other hand, contend that the assessed sales taxes are merely excise taxes[19] under § 507(a)(8)(E) and, thus, are not entitled to priority because they are more than three (3) years old.

As a preliminary matter, the Court notes that neither § 507(a)(8)(C) nor § 507(a)(8)(E) expressly mentions "sales" taxes. Section 507(a)(8)(C) establishes priority for "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C). These taxes are commonly known as "trust fund" taxes although there is no language in the statute tying them to the existence of a trust *res* under principles of trust law. Importantly, trust fund taxes do not lose their priority status no matter their age. 4 COLLIER ON BANKRUPTCY ¶ 507.11[1][b] (16th ed.2014). Section 507(a)(8)(E) establishes priority for "an excise tax on ... a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(E). Unlike trust fund taxes, excise taxes lose their priority status if they are older than three (3) years. There is some overlap between § 507(a)(8)(C) and § 507(a)(8)(E) in that a tax may be both an excise tax and a trust fund tax. *Rosenow v. Ill. Dep't of Revenue (In re Rosenow)*, 715 F.2d 277, 279–80 (7th Cir.1983).

Because the Debtors' sales tax obligation is for the 2004–2007 tax period and the Debtors filed the Petition in 2013, their obligation clearly falls outside the three (3) year look back period for priority payment of excise taxes. Therefore, whether the taxes in question are excise taxes or trust fund taxes is dispositive of their dischargeability in the Bankruptcy Case.

Both the MDOR and the Debtors find support for their respective positions in *Alabama Department of Revenue v. Fox*

15. From this point forward, all section references are to the U.S. Bankruptcy Code (the "Code") found at title 11 of the United States Code unless otherwise noted.

16. A governmental unit is defined in the Code to include state taxing authorities. 11 U.S.C. § 101(27).

17. Section 507(a) establishes ten (10) categories of expenses and claims, listed in descending order, that are entitled to priority payment.

18. The parties do not dispute that the taxes in question fall within the eighth priority.

19. The term "excise tax" is not defined in the Code but generally refers to a "tax imposed on the manufacture, sale, or use of goods ... or on an occupation or activity (such as a license tax or ... occupation fee)." BLACK'S LAW DICTIONARY 684-85 (10th ed. 2014).

*(In re Fox)*, 609 F.2d 178 (5th Cir.1980). In *Fox*, the Fifth Circuit Court of Appeals considered whether uncollected sales taxes were dischargeable in bankruptcy under § 17(a)(1)(e) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1) ("§ 17(a)(1)"), the precursor to § 523(a)(1)(A) and § 507(a)(8)(C). Section 17(a)(1) amended prior bankruptcy law that excepted from discharge *all* taxes by: (1) placing a three (3) year limit on unpaid taxes beyond which they were dischargeable and (2) creating exceptions to the three (3) year limit. Among the exceptions to the three (3) year limit was the provision in § 17(a)(1)(e) that rendered nondischargeable "any taxes ... which the bankrupt has collected or withheld from others ... but has not paid over." 11 U.S.C. § 35 (repealed).

The Fifth Circuit in *Fox* construed § 17(a)(1)(e) as applying to *sales* taxes, subject to certain conditions. *See generally Fox*, 609 F.2d at 178. Although there was no explicit reference in § 17(a)(1)(e) to sales taxes, the Fifth Circuit held that § 17(a)(1)(e) was not limited in application to traditional "trust fund" taxes, such as Social Security taxes withheld from the pay of employees. *Id.* at 181. The Fifth Circuit refused to treat employers differently from retailers, reasoning that "a restrictive application [to employers] is inconsistent with the language and legislative history of § 17(a)(1)." *Id.* at 181 (footnote omitted). After *Fox*, numerous other courts reached the same conclusion that § 17(a)(1)(e) could apply to sales taxes. *See DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432 (2d Cir.1985); *In re Calabrese*, 689 F.3d 312 (3d Cir.2012); *Rosenow*, 715 F.2d at 277; *Shank v. Wash. Dep't of Revenue (In re Shank)*, 792 F.2d 829 (9th Cir. 1986); *W. Sur. Co. v. Waite (In re Waite)*, 698 F.2d 1177 (11th Cir.1983); *Rikard v. Ala. Dep't of Revenue*, 127 B.R. 59 (N.D.Ala.1989); *McDonough v. Iowa Dep't of Revenue (In re McDonough)*, 346 B.R. 492 (Bankr.S.D.Iowa 2006); *Kelley v. United States (In re Kelley)*, 171 B.R. 113 (Bankr.N.D.Okla.1994); *Malcuit v. Tex.*, 134 B.R. 185, 187 (N.D.Tex.1991); *In re Taylor Tobacco Enters.*, 106 B.R. 441 (E.D.N.C.1989).

The MDOR cites *Fox* for the proposition that the nondischargeability provision for trust fund taxes in § 507(a)(8)(C) applies to *all* sales taxes. Because the taxes in question are sales taxes, therefore, they necessarily fall within the meaning of § 507(a)(8)(C), according to the MDOR. The Debtors, in contrast, cite *Fox* for the proposition that the nondischargeability provision for trust fund taxes applies only to *collected* sales taxes. The Debtors point out that the Fifth Circuit in *Fox* interpreted § 17(a)(1)(e) as prohibiting the discharge of sales taxes only to the extent they actually were collected. *Fox*, 609 F.2d at 181–82.

■ The Court rejects both the MDOR's and the Debtors' application of *Fox* to the present tax dispute. The Court disagrees with the MDOR's view that the particular nomenclature used in the Assessment is dispositive of the dischargeability issue. *See City of N.Y. v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941) (holding that whether an obligation is a "tax" entitled to priority under the Bankruptcy Act is a federal question). That the taxes in question are called *sales* taxes under the Mississippi Sales Tax Law does not necessarily require that they be treated as trust fund taxes under federal bankruptcy law for dischargeability purposes. In *Fox*, the Fifth Circuit applied § 17(a)(1)(e) to sales taxes that otherwise fell within the nature of trust fund taxes. *Fox*, 609 F.2d at 181–82.

■ The Court also disagrees with the Debtors' view that a debtor must collect

the sales taxes before they may be construed as trust fund taxes under federal bankruptcy law. Section 507(a)(8)(C) excludes from discharge taxes that are *"required to be* collected or withheld and for which the debtor is liable in whatever capacity." In comparison, § 17(a)(1)(e) excluded from discharge only those taxes which "the bankrupt has collected or withheld from others." Because of this change, courts have held that uncollected sales taxes may form the basis for a non-dischargeability claim under § 523, provided the debtor is liable in some capacity and the sales taxes otherwise meet the criteria of trust fund taxes. *See Taylor,* 106 B.R. at 445 (holding that same considerations of public policy apply to uncollected sales taxes); *McDonough,* 346 B.R. at 496 ("Failure to collect sales tax from customers does not render the liability dischargeable.").

In addition to *Fox,* the Debtors rely on *In re Avant,* 110 B.R. 264, 265 (Bankr. W.D.Tex.1989). In *Avant,* the bankruptcy court held that § 507(a)(7)(C), the immediate precursor to § 507(a)(8)(C),[20] contained the same policy reflected in § 17(a)(1)(e) as gleaned by the Fifth Circuit in *Fox* — that the trust fund provision may except sales taxes from discharge. *Avant,* 110 B.R. at 265. The *Avant* Court found that sales taxes under Texas law were trust fund taxes, not merely excise taxes, because Texas law required sellers to add sales taxes to the price of goods as a debt owed by the buyer to the seller until paid. *Id.* Thus, the bankruptcy court ruled that Texas sales taxes were nondischargeable.

The Debtors attempt to distinguish *Avant* on the ground that the sales taxation scheme in Mississippi, unlike in Texas,

imposes sales taxes on retailers, not their customers, and does not require retailers to withhold or collect sales taxes from their customers. For that reason, the Debtors argue that sales taxes are excise taxes levied for the privilege of doing business within the State of Mississippi.

In order to ascertain whether the assessed sales taxes are excise taxes or trust fund taxes under federal bankruptcy law, the Court turns to the statutory text of the law that created the sales taxes in question. *In re Adams,* 40 B.R. 545, 547 (E.D.Pa.1984). The Mississippi Sales Tax Law provides, in pertinent part:

### § 27–65–31. Seller to Collect Tax.

Any person liable for a privilege tax levied and assessed by this chapter ... shall add the amount of such tax due by him to the sales price or gross income and, in addition thereto, collect, *insofar as practicable,* the amount of the tax due by him from the purchaser at the time the sales price or gross income is collected.

\* \* \*

The funds collected by the taxpayer (seller) from the purchaser pursuant to the provisions of this chapter shall be considered "trust fund monies" and the taxpayer shall hold these funds in trust for the State of Mississippi; said funds to be separately accounted for as provided by regulation of the commissioner. If the taxpayer fails to remit these trust fund monies as required by law, then the taxpayer may be assessed with a penalty in three (3) times the amount of taxes due. This penalty is to be assessed and

---

**20.** The tax priority in § 507(a) has been renumbered twice. When the Code was originally enacted, the current § 507(a)(8) was designated as § 507(a)(6). It was re-designated as § 507(a)(7) by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 350(2), 98 Stat. 333, 359. The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 re-designated it as § 507(a)(8), where it is currently found.

collected in the same manner as taxes imposed by this chapter and shall be in addition to all other penalties and/or interest otherwise imposed. For purposes of this section there shall be a presumption that the taxpayer collected the tax from the customer or purchaser.

MISS. CODE ANN. § 27–65–31 (emphasis added). The Debtors argue that uncollected sales taxes are not by nature trust fund taxes because in Mississippi (unlike in other states) the legal obligation of a seller to collect sales taxes from a buyer is only "insofar as practicable." The Debtors compare the "insofar as practicable" language in MISS.CODE ANN. § 27–65–31 with the following language in the Mississippi income tax withholding law, MISS.CODE ANN. § 27–7–305: "Every employer making payments of wages to employees *shall* deduct and withhold from such wages an amount determined from withholding tables promulgated by the commissioner and furnished to the employer." MISS. CODE ANN. § 27–7–305 (emphasis added).

■ The Court finds that even if the Debtors are correct that a seller has no obligation to collect sales taxes in Mississippi, their interpretation of MISS.CODE ANN. § 27–65–31 is irrelevant to the present dispute. The summary judgment record indicates, without dispute, that the assessed sales taxes were deposited in the bank account but not remitted to the MDOR. The Debtors' own challenge to the accuracy of the Assessment in the Debtor Brief supports this finding because the Debtors rest their argument primarily on the auditor's treatment of deposits in the account. The Debtors' insistence that the sales taxes in question were not actually collected from customers arises out of their argument that the deposits consisted of loan proceeds, not sales proceeds. It is the remittance of the taxes to the MDOR, not their presence in the account, that the

Debtors dispute. Because the assessed taxes were deposited in the account, whether Mississippi law required Scooters Trademart to collect the assessed sales taxes from its customers or Scooters Trademart was primarily liable for the assessed sales taxes is immaterial.

For this same reason, the Court finds that the Debtors' reliance on *Mobility Medical Inc. v. Mississippi Department of Revenue*, 119 So.3d 1002, 1005 (Miss.2013), is misplaced. A federal preemption case, *Mobility Medical* involved the interaction between the Federal Employee Health Benefits Act, 5 U.S.C. § 8909(f), which prohibits states from imposing taxes on insurance carriers participating in the Federal Employee Health Benefits Plan (FEHBP), and the Mississippi Sales Tax Law that in 2008 the MDOR began applying to retail sales of medical equipment to individuals enrolled in the FEHBP. *Mobility Med.*, 119 So.3d at 1004–05. Because the retailer that sold the equipment was not an insurance carrier and was not required to pass costs on to its customers or the FEHBP, the Mississippi Supreme Court found the connection between the Mississippi Sales Tax Law and the federal prohibition too tenuous for preemption to apply. *Mobility Med.*, 119 So.3d at 1004–05. The Supreme Court's reasoning followed this path: the retailer *might* pass the tax along to its customer; the customer *might* seek reimbursement for the tax from the insurance carrier; the insurance policy *might* cover the tax; and the insurance carrier *might* pass the sales taxes on to the FEHBP. *Id.*

The Debtors rely on *Mobility Medical* for its fast food reference used by the Mississippi Supreme Court to explain a seller's duty to collect sales taxes:

[M]ost purveyors of cheeseburgers tack the sales tax onto the price of the cheeseburger. But the dissent is not correct

in its understanding that tacking the sales tax onto the price is required, nor is the dissent correct in its understanding that the consumer must pay a tacked-on sales tax that cheeseburger vendors "are required to remit to the state." Cheeseburger vendors are perfectly free under Mississippi law to set the price of a cheeseburger at $4.00, and then require their customers to pay exactly $4.00. It is the vendor—not the customer—who is required by Mississippi law to pay the sales tax.

*Id. But see Mobility Med.,* 119 So.3d at 1007 (Kitchens, J., dissenting) ("Sales taxes, by definition, always are indirect taxes on the consumer."). The MDOR attempts to minimize the holding in *Mobility Medical* by insisting that sellers remain liable for sales taxes regardless of the scope of their duty to collect them from their customers.

There is little guidance from the Mississippi appellate courts regarding the extent to which *Mobility Medical* applies outside the field of preemption. Regardless, the Court finds it unnecessary to apply the holding in *Mobility Medical* because it is undisputed that the Assessment against the Debtors was based on actual deposits in the account. The Debtors recognize the import of this finding when they concede in the Debtors' Brief that "[t]o the extent they are collected from the purchaser, then and only then, do they constitute trust funds monies." (Debtors' Br. at 9).

Because of the undisputed fact that the assessed sales taxes were actually deposited, the Court finds that there is no genuine issue that they are "trust fund monies" under Mississippi law, which establishes their priority under § 507(a)(8)(C). In making this finding, the Court does not express an opinion whether uncollected sales taxes fall within the definition of trust fund monies under Mississippi law.

Since § 523(a)(1) defines taxes that fall within the scope of § 507(a)(8)(C) as exceptions to discharge, the Court finds that the assessed sales taxes are nondischargeable in the Bankruptcy Case.

The Debtors contend that if this Court determines that the taxes are trust fund monies, the "lowest intermediate balance" rule applies and there is a genuine issue of material fact as to whether the Debtors had sufficient funds in the account when the Bankruptcy Case was filed to pay the assessed sales taxes. (Debtors' Br. at 5–6). According to the Debtors, when trust funds have been commingled with other funds, the "lowest intervening balance" rule determines if the funds can be properly traced and recovered. *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron),* 155 F.3d 718, 724 (4th Cir.1998). The Debtors assert that if the postpetition amount in the checking account fell below the amount of the trust fund taxes, then their liability is limited to the "lowest balance." *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.),* 817 F.2d 682, 684–85 (10th Cir.1987). "[I]f the amount on deposit in the commingled funds has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount." *Dameron,* 155 F.3d at 724 (citation omitted); *see United States v. McConnell,* 258 B.R. 869, 875 (N.D.Tex.2001).

█ The Court rejects the Debtors' attempt to apply principles of state trust law to § 507(a)(8)(C). The language of § 507(a)(8)(C) contemplates unlimited priority to any tax required to be collected from a third party, whether a trust *res* exists or not. The Debtors' argument ignores the interplay between state law and federal bankruptcy law. Although the Court looks to state law for guidance as to the proper characterization of sales taxes, the ultimate issue of dischargeability is governed by federal bankruptcy law.

*Archer v. Warner,* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003); *N.J. v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 51 L.Ed. 284 (1906) ( [T]he bankruptcy act is a Federal statute, the ultimate interpretation of which is in the Federal courts."). For these reasons, the Court finds that the "lowest intermediate balance" rule does not apply and the full amount of the Assessment is nondischargeable.

### Conclusion

Once a summary judgment movant presents sufficient, competent evidence to entitle it to summary judgment as a matter of law, the nonmovant cannot rest merely on bare allegations in its pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Hawking v. Ford Motor Credit Co.,* 210 F.3d 540, 545 (5th Cir.2000). Perfunctory statements, vague accusations, and conclusory statements made by the Debtors in the Debtors' Brief in opposition to the Summary Judgment Motion are not enough to defeat the MDOR's Summary Judgment Motion. *See Wallace v. Tex. Tech. Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (declining to consider facts in a brief as summary judgment evidence). The Court concludes that the Debtors have failed to overcome the *prima facie* correctness of the Assessment. Therefore, the MDOR is entitled to summary judgment as a matter of law that the Assessment, including any accrued interest, is nondischargeable under § 523(a)(1).[21] The Court will issue a separate final judgment dismissing the Adversary with prejudice.

**SO ORDERED**

---

**21.** The dischargeability of the late penalties included in the Assessment was not raised by the Debtors as an issue in the Adversary and, therefore, is not before the Court.